MICHAEL CLOBES, APPELLANT, V. NEBRASKA BOXED BEEF ET AL., APPELLEES.

472 N.W.2d 893

Filed July 12, 1991.   No. 90-417.

Scott M. Kirshenbaum for appellant.

Joseph E. Andres, of Naviaux, Kinney, Andres & Titus, for appellee Nebraska Boxed Beef.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

GRANT, J.

Plaintiff, Michael Clobes, appeals from an order by a three-judge panel of the Workers' Compensation Court on rehearing. The order dismissed his claim for workers' compensation based on a tear in his aorta. He had originally been awarded compensation by a single judge of that court. We reverse and remand.

Plaintiff was employed by defendant-appellee Nebraska Boxed Beef from October 11 to November 3, 1988. During this period, he worked approximately 14 1/2 days as a bull saw operator trainee. The bull saw operator position is a two-person operation which consists of one employee guiding a 150- to 250-pound hindquarter of beef from an overhead track onto a dumping table, and then another employee pushing the hindquarter through a powersaw and onto a conveyor belt. The two employees would trade positions about every half hour. Approximately 300 to 400 hindquarters per hour could be processed in this manner.

It is unclear exactly how much heavy labor was required of plaintiff as a trainee. There was testimony that when plaintiff was being trained, a third party helped with the operation of the bull saw. The third party did much of plaintiff's work.

On the same day that plaintiff began work at Nebraska Boxed Beef's plant, he also began a second job vacuuming car interiors at Stacy's Wash & Shine. Both businesses are located in Omaha. Plaintiff worked 16.5 total hours at the carwash during

the 4 weeks prior to his hospitalization. The record indicates that plaintiff had previously held a number of other jobs involving manual labor.

Plaintiff was 28 years old at the time of his hospitalization and had a known heart murmur. Plaintiff suffered from a congenital condition known as Marfan's syndrome, although this was not diagnosed until after plaintiff left his work at Nebraska Boxed Beef. Marfan's syndrome affects the connective tissues of the body and frequently manifests itself as a defect in the aortic valve of the heart. Plaintiff had an insufficiency in an aortic valve which allowed blood to leak back into his left ventricle, causing the ventricle to become enlarged.

Plaintiff testified that he began to experience shortness of breath and chest tightness soon after beginning work at Nebraska Boxed Beef's plant. He worked, without reporting any pain or discomfort, on October 11, 12, 13, 14, 17, 18, 19, and 20. Defendant's plant was closed on Friday, October 21. Plaintiff testified that because he had difficulty breathing Sunday night, on Monday, October 24, he went to his hometown of Humboldt to see his family doctor, Dr. Stephen Stripe. Before this trip to the doctor, plaintiff had last worked for Nebraska Boxed Beef on Thursday the 20th and had last worked at the carwash on Friday, October 21. Although Dr. Stripe ordered a chest x ray and noted that the heart had increased in size, he found that plaintiff was in no immediate danger and allowed him to return to work at both jobs. Dr. Stripe set up an appointment for him for the following Monday, October 31, with Dr. James Morgan, an Omaha cardiologist.

On October 31, after having worked on October 26, 27, and 28 the previous week, plaintiff saw Dr. Morgan. An echocardiogram was ordered. The echocardiogram revealed the presence of the aortic insufficiency and the enlarged heart. Plaintiff returned to work on the day of the examination and worked on November 1 and 2.

Plaintiff testified that he continued to experience problems breathing during those 3 days at work. On Thursday, November 3, plaintiff left work early and telephoned Dr. Morgan.

Liz Cramer, defendant Nebraska Boxed Beef's personnel

manager, testified that plaintiff came in the following day, Friday, November 4, and requested that she help him fill out a first report of injury for workers' compensation. She testified plaintiff said that he had a degenerative heart valve and that his doctor had told him it was work related. The company's work records show that plaintiff was absent on November 4. Plaintiff's last day of work for Nebraska Boxed Beef was November 3, when he left work early.

Work records from the carwash show that plaintiff worked from 12:40 p.m. to 1:05 p.m. on Friday, November 4, vacuuming car interiors. Plaintiff's girl friend was a regular employee at Stacy's. The manager at Stacy's testified that plaintiff was allowed to work at the carwash almost anytime that he wanted to fill in some time. Plaintiff had no regular schedule at the carwash.

Plaintiff testified that later that afternoon he returned to Humboldt. He told his mother that he was having difficulty breathing. He saw Dr. Stripe later that evening and was admitted to Community Memorial Hospital in Humboldt. Test results showed that plaintiff was suffering from congestive heart failure. After spending the weekend at the hospital in Humboldt, he returned to Omaha, where Dr. Morgan admitted him to Methodist Hospital for a heart catheterization. The catheterization was performed on Monday, November 7. It showed the aortic insufficiency, marked left ventricle failure, and an aneurysm of the ascending aorta. The catheterization also showed a dissection, or tear, in the aorta. On Thursday, November 10, surgery was performed to correct the aortic insufficiency, or leaky heart valve. During the operation, plaintiff's aortic valve and the ascending portion of his aorta were replaced. This operation corrected the aortic dissection. On December 9, plaintiff returned to work at the carwash. He never worked again at Nebraska Boxed Beef's plant.

Dr. Morgan testified that plaintiff had Marfan's syndrome. He testified that Marfan's is a congenital disease which weakens the connective tissues of the body. He testified that it frequently manifests itself in damage to blood vessels, especially the aorta. He testified, however, that it is not inevitable that a Marfan's patient would experience blood vessel damage and, in fact, that

many Marfan's patients do not.

Dr. Morgan stated that it was his opinion, to a reasonable degree of medical certainty, that the tear in plaintiff's aorta was caused by sudden increases in blood pressure resulting from the repetitive strenuous nature of plaintiff's work at Nebraska Boxed Beef's plant. He stated that plaintiff would be forced to lead a sedentary lifestyle and that he would be at severe risk if he sought to engage in isometric activities such as lifting or carrying heavy objects.

Defendants presented evidence from two physicians who disputed Dr. Morgan's opinion as to causation. When asked if plaintiff's work at Nebraska Boxed Beef contributed to the aortic dissection, Dr. Michael Sketch testified:

> We have no evidence that it contributed to or that it didn't contribute to.
>
> Since we don't have any evidence to state when or where it occurred, we can't say his work had anything to do with it because of the fact that's previously stated that these aneurysms will rupture or dissect, if you want to use that term, either spontaneously or with minimal exertion.
>
> And it could have occurred while Mr. Clobes was watching TV, sitting down, carrying the groceries in, having a bowel movement, or working at his second job which was cleaning out cars.

Dr. Sketch did testify that sudden increases in blood pressure enhance the risk of aortic tears in Marfan's patients who have aneurysms of the aorta or aortic insufficiency. He testified that because of the corrective surgery, plaintiff is better off today than he was prior to his employment with Nebraska Boxed Beef.

Dr. Randolph Ferlic also reviewed plaintiff's medical records and concluded that plaintiff had a purely congenital problem that had been aggravated by lifelong expansion of his aorta. He concluded that the aortic tear could have occurred at any time, during the course of any strain.

On rehearing, the three-judge panel of the Workers' Compensation Court dismissed plaintiff's claim. The court stated that "[t]his was an interesting case that was well tried by both parties," and noted that there was "a conflict in the

medical testimony between three respected physicians as to the cause of the tear." In its conclusion, the court stated:

> The Court finds that the medical evidence is inconclusive as to when and how the tear in the aorta occurred and that due to the fact the plaintiff suffered from a preexisting congenital condition, namely marfan's syndrome, that the plaintiff has an enhanced burden of proof as to causation which he has failed to meet. For the above reasons, the plaintiff's petition should be dismissed.

In our review, findings of fact by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside on appeal unless clearly wrong. *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991).

An order based on findings of fact made by the compensation court may be reversed, however, if those findings do not support the court's order. Neb. Rev. Stat. § 48-185(4) (Reissue 1988); *Yager, supra*. This court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Yager, supra*.

After the compensation court's order on rehearing and subsequent to the submission of briefs in this case, this court decided the case of *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990). In that case, this court expressly disapproved language in earlier cases which imposed an "enhanced" burden of proof as to causation upon claimants with preexisting disabilities. The compensation court's order in this case reflects that the court imposed an "enhanced" burden upon the claimant. This court noted in *Heiliger* that Neb. Rev. Stat. § 48-151(2) (Reissue 1988) requires that the claimant has the burden of establishing causation by only a preponderance of the evidence. There is no exception for claimants with preexisting disabilities. We said:

> [A] claimant is entitled to an award under the Workers' Compensation Act for a work-related injury and disability if the claimant shows, by a preponderance of evidence, that the claimant sustained an injury and disability proximately caused by an accident which arose out of and in the course of the claimant's employment,

even though a preexisting disability or condition has combined with the present work-related injury to produce the disability for which the claimant seeks an award.

*Heiliger, supra* at 467, 461 N.W.2d at 571-72.

We also said:

Although a claimant with a preexisting disability or condition may face various obstacles . . . and must satisfy the statutory requirements for an award under the Nebraska Workers' Compensation Act, an enhanced degree of proof, establishing a cause-and-effect relationship between a work-related injury and consequent disability, is not among a claimant's burdens for obtaining an award under the Nebraska Workers' Compensation Act.

*Heiliger, supra* at 468, 461 N.W.2d at 572.

The word "enhanced" has a meaning which results in imposing a greater burden on injured workers in cases involving preexisting physical disabilities or conditions than the statutory burden set out in § 48-151(2). "Enhanced" is defined in Black's Law Dictionary 529 (6th ed. 1990) as "[m]ade greater; *e.g.* in value . . . . This word, taken in an unqualified sense, is synonymous with 'increased,' and comprehends any increase of value, however caused or arising."

In this case, the doctors agreed that plaintiff had a preexisting condition. One doctor testified that plaintiff's injury was caused by the repetitive, strenuous nature of his work for Nebraska Boxed Beef. Two doctors stated that there was no evidence that plaintiff's employment caused, or did not cause, plaintiff's injury.

On such a record, the fact finder could determine that the employment caused the injury or did not. In making that determination, however, the fact finder must not require that the injured worker prove causation by more than a preponderance of the evidence. To use an "enhanced" burden of proof is to require proof by more than a preponderance of the evidence.

In *Heiliger*, we held that we were incorrect in stating that an enhanced burden of proof was required in cases such as this. Our mistake has caused the Workers' Compensation Court to

err in this case.

In *Gray v. Fuel Economy Contracting Co.*, 236 Neb. 937, 464 N.W.2d 366 (1991), this court affirmed an order of the compensation court which contained language that referred to an enhanced burden of proof. The court in *Gray* held that it was irrelevant that an erroneous standard was imposed in that case because the evidence in the record was so lacking that as a matter of law it was insufficient to support claimant's theory of causation. See, also, *Bell Fed. Credit Union v. Christianson*, 237 Neb. 519, 466 N.W.2d 546 (1991).

*Gray* is distinguishable from the present case. One of plaintiff's treating physicians has testified as to causation to a reasonable degree of medical certainty. It is true that the compensation court, as a finder of fact, is not bound by the testimony of an expert. See *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991). The evidence adduced by plaintiff in this case, however, was not so insufficient that the court would be forced to deny compensation as a matter of law.

The compensation court's finding that the evidence relating to causation was inconclusive is also insufficient to support the court's order dismissing plaintiff's petition. Under a preponderance of the evidence standard, a claimant does not need to conclusively prove causation. The evidence must merely preponderate in the claimant's favor. That is, the evidence need show only that the fact that the injury arose out of and in the course of claimant's employment is more probable than not. It is not possible from a review of the record in this case to know if the compensation court might have found that plaintiff was unable to meet this less exacting standard.

It is apparent from the compensation court's order that the court considered this to be a close case. This judgment is reversed and the cause remanded so that the compensation court may apply the correct standard regarding plaintiff's burden of proof.

It is so ordered.

REVERSED AND REMANDED WITH DIRECTIONS.

FAHRNBRUCH, J., concurring.

I concur in the result. However, I write separately to note our recent decision in *Leitz v. Roberts Dairy*, 237 Neb. 235, 465

N.W.2d 601 (1991). Under *Leitz*, there was sufficient evidence in this case to present the compensation court with a question of fact on the issues of legal and medical cause of the worker's injury.

CAPORALE, J., dissenting.

I respectfully dissent. On January 25 of this year, in *Yarns v. Leon Plastics, Inc.*, 237 Neb. 132, 464 N.W.2d 801 (1991), we observed that *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990), did nothing more than correct the improvident language we had theretofore used to describe the enhanced degree of persuasion confronting a workers' compensation claimant suffering from a preexisting condition.

*Yarns* observes that our earlier language declaring that a previously impaired claimant must meet an enhanced burden of proof meant only that such a claimant faced a more difficult task in persuading the compensation court that the exacerbated condition for which he or she sought benefits would not exist but for the work-related accident.

Finding nothing which suggests that in parroting our old language the compensation court meant anything other than it was not convinced plaintiff's preexisting condition was exacerbated by the work-related accident, I would affirm.