MARY CLINE, APPELLANT, V. COUNTY SEAT LOUNGE, INC., AND TOWER INSURANCE COMPANY, INC., APPELLEES.

473 N.W.2d 404

Filed August 30, 1991.   No. 90-1140.

Randall L. Lippstreu and Robert M. Harris, of Harris & Lippstreu, for appellant.

Jill Gradwohl Schroeder, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Plaintiff, Mary Cline, appeals from a decision of the Nebraska Workers' Compensation Court which awarded her temporary total disability benefits from September 21, 1986, through December 17, 1986, due to a cervical strain, and which assigned her a subsequent 15-percent loss in earning capacity. The court denied compensability for a low back injury which was also alleged to have arisen out of and in the course of plaintiff's employment and denied vocational rehabilitation benefits. We affirm.

The record shows the following: Larry and Mary Cline, husband and wife, opened the County Seat Lounge in Scottsbluff in 1978. The County Seat Lounge was a nightclub featuring noontime lunches and dancing in the evenings. The club seated approximately 425 people and employed 10 to 12 workers. Plaintiff and her husband were coowners and operators of the lounge. Plaintiff testified that her job duties included bookkeeping, doing payroll, ordering food, bartending, and assisting in managing employees. In 1985, defendant-appellee County Seat Lounge was incorporated.

Plaintiff and her husband were sole shareholders. Plaintiff was secretary and received a salary of $250 per week. Her husband was president, with a salary of $500 per week. The corporation paid workers' compensation premiums on behalf of all of its employees. At the time of the injury, defendant-appellee Tower Insurance Company, Inc. (Tower), was the workers' compensation insurance carrier for the lounge.

Plaintiff testified that on September 20, 1986, she suffered an injury on the job while lifting two cardboard boxes of empty beer bottles. She stated that while lifting the bottles, she heard someone call her name and turned her head quickly. She testified that she immediately felt a pain which shot from her neck down into her arm. She continued to work that evening, although she continued to experience pain. She also worked the days following the injury.

Plaintiff first sought treatment for her injury on September 25, 1986. She went to a chiropractor and complained of pain in her neck, in her right arm, and between her shoulder blades, and of numbness in her right hand. She did not complain of low back pain in her initial visit with the chiropractor. The chiropractor took x rays of plaintiff's upper and lower spine. An insurance form filled out by the chiropractor on October 29, 1986, stated that plaintiff alleged injury to "her neck, upper back and right arm." There was no mention of a low back injury in the report. A letter from the chiropractor addressed to plaintiff's counsel dated August 25, 1988, stated that in addition to the above-mentioned complaints, plaintiff, at the time of her first visit, had complained of "a left hip and low back pain which periodically radiated into the left leg."

Plaintiff testified that she saw the chiropractor three times a week for chiropractic treatments between her first visit and December 4, 1986. Treatment included "Chiropractic Manipulation, Trigger Point Therapy and Inter Segmental Traction." Plaintiff was given a shoulder brace that she wore 24 hours a day.

After December 4, 1986, plaintiff's treatments were discontinued. Plaintiff testified, over objection, that "[t]he insurance company said it . . . wouldn't pay for any more chiropractic treatment." No letter to that effect appears in the

record. In his August 25, 1988, letter to plaintiff's counsel, the chiropractor states that "Mrs. Cline discontinued treatment in this office due to a report issued by the Workmen's Compensation Carrier orthopedic consultant . . . ." The orthopedic surgeon first examined the patient in February 1987.

On December 17, 1986, the chiropractor filled out a "Medical Status Report" form for Tower. The report described the plaintiff's condition, as of her December 4, 1986, visit, as "intermittent tingling of the right arm and hand with nocturnal paresthesia and premature fatigue of the right arm with usage." The typed answer to the question "Anticipated date of maximum medical improvement or discharge" stated "approximtely [sic] 2-1-87." The chiropractor estimated 5 percent permanent partial disability to the "Cervical Thoracic Spine and Right Arm." The report contained no mention of any low back injury. Plaintiff testified that at the time of her December 4 visit with the chiropractor, her back "was feeling pretty good." Plaintiff did not seek or receive any medical treatment from December 1986 until December 1989.

On February 9, 1987, plaintiff was examined by defendants' orthopedic consultant. His recommendation was that the plaintiff give her injury more time and try some home therapy. He said, "At this point, I see no evidence of [a] 5% disability rating." Plaintiff testified that she did not mention anything about her lower back to the examining doctor because her back was not hurting at the time.

The evidence is sketchy concerning plaintiff's work history during 1987. There were no timesheets or tax records introduced into evidence. Plaintiff testified that although she generally stayed home, once in a while she would "feel guilty" and "would go in and try to help Larry." There is some evidence that plaintiff worked at the bar fairly regularly during the months of April and May. She testified that she discontinued going down to the bar after May because business was slow and she could not stand the pain of standing or sitting for too long. Plaintiff also continued to do the paperwork and recordkeeping at home for the business, until the business closed in August 1987 due to financial difficulties.

In May 1988, the Clines moved to California. They returned to Nebraska approximately 2 months later. For about 3 months after the Clines returned from California, plaintiff received unemployment compensation benefits from the State of Nebraska.

In the fall of 1988, plaintiff sold Avon cosmetics out of her home, but she soon discontinued this because she found it was not profitable. Plaintiff testified that she has not engaged in any other work, nor has she applied for any other jobs, since the County Seat Lounge closed in August 1987.

Plaintiff filed her petition in the Workers' Compensation Court on November 23, 1988. The chiropractor saw plaintiff on December 29, 1988, for evaluation purposes. His report of January 9, 1989, stated that it was his opinion that due to the interruption in plaintiff's care, her condition had deteriorated from an acute to a chronic condition. He recommended 50 to 70 chiropractic treatments over the next year at an estimated cost of $1,700 to $2,400. He found that impairment to the cervicothoracic spine and to the lumbar spine caused claimant to suffer a 15-percent whole body impairment.

In April 1989, plaintiff sought assistance from the Nebraska Division of Rehabilitation Services. A rehabilitation counselor with the division gave conflicting testimony as to plaintiff's employability. On direct examination, he stated that he found that plaintiff was not employable in any type of employment and that she was not a candidate for rehabilitation services. On cross-examination, he stated that based on the work restrictions contained in her medical reports, plaintiff had a number of transferable job skills and was qualified for a number of jobs for which she had prior training and experience. He also testified that one of the principal obstacles to plaintiff's returning to work was significant anxiety, frustration, and depression. He noted that he had forwarded a job lead to plaintiff that he felt she was qualified for, but that she took no action on it. A rehabilitation specialist hired by defendant testified that plaintiff was employable in a number of capacities and that several of her previous jobs fell within her capabilities.

On December 13, 1989, plaintiff was taken to a hospital emergency room after she experienced extreme pain. An

appointment was scheduled with a neurosurgeon for December 20. This doctor treated plaintiff through January 15, 1990, for pain and numbness in her neck, upper back, lower back, right hand and arm, and left leg. This was the first medical treatment plaintiff had sought or received in more than 3 years. This doctor's diagnosis was that plaintiff suffered from cervical strain syndrome, right carpal tunnel syndrome, and a disk lesion at L5-S1, all of which he believed were related to the September 1986 work accident.

Plaintiff then saw another neurosurgeon on a referral from the first. This doctor concluded that she suffered from carpal tunnel syndrome, a bulging disk at C5-6, and a degenerated disk at L5-S1, all of which required surgery. He concluded that plaintiff's condition resulted from the September 1986 work accident and that she would be considered totally disabled without corrective surgery.

On October 29, 1990, the compensation court rendered its award on rehearing. The court found that plaintiff experienced temporary total disability due to a cervical strain from September 21, 1986, through December 17, 1986, and a subsequent 15-percent loss in earning capacity. The court stated that plaintiff "failed to meet her burden of proof that the present conditions to the low back from which she suffers are the result of the original accident and injury of September 25, [sic] 1986." The court also denied vocational rehabilitation.

The court specifically found that the medical records of the chiropractor reflected that the original complaints given to him concerned the neck and shoulder areas, while the later complaints primarily concerned a low back injury. The court also specifically found that plaintiff was not entitled to vocational rehabilitation for the "reason that the plaintiff has had a demonstrated ability to return to work after the original injury and in fact did so return to work until unrelated financial difficulties closed the business."

Plaintiff assigns 11 errors in this appeal. As summarized, plaintiff contends that the compensation court erred (1) in failing to find plaintiff was entitled to compensation for her low back injury, (2) in finding that plaintiff was released for work in December 1986, (3) in denying any medical expenses after

December 1986, (4) in determining the degree of plaintiff's disability, and (5) in denying vocational rehabilitation benefits.

We first note this court's standard of review in workers' compensation cases. Findings of fact by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside on appeal unless clearly wrong. *Clobes v. Nebraska Boxed Beef*, 238 Neb. 612, 472 N.W.2d 893 (1991); *Knowlton v. Airport Transportation Co.*, 235 Neb. 96, 454 N.W.2d 278 (1990); Neb. Rev. Stat. § 48-185 (Reissue 1988). In testing the sufficiency of the evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. *Roan Eagle v. State*, 237 Neb. 961, 468 N.W.2d 382 (1991). Every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *S.N. Mart, Ltd. v. Maurices Inc.*, 234 Neb. 343, 451 N.W.2d 259 (1990). As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given testimony. *Roan Eagle, supra.*

Viewed in the light most favorable to the successful party, there is sufficient evidence to support the court's finding that the plaintiff has "failed to meet her burden of proof that the present conditions to the low back from which she suffers are the result of the original accident and injury of September 25, [sic] 1986." Neither of the reports filled out by the chiropractor in 1986 mentions the low back injury. Plaintiff did not testify at trial that she reported any such injury in her first visit with the chiropractor. She did testify that her low back was not troubling her at the time of her December 4, 1986, visit with the chiropractor. She also testified that her back was not troubling her at the time of her February 9, 1987, visit with defendants' examining physician. It was more than 3 years after plaintiff's treatments with the chiropractor that she again sought any treatment. Under these facts, the court's denial of compensation for the low back injury was not clearly wrong.

Plaintiff takes issue with the court's finding that the

chiropractor "treated the plaintiff through December 17, 1986, at which time he released plaintiff to return to work." The fact is that plaintiff worked during the entire time of her treatments with the chiropractor. It is true that he states that she would not reach maximum medical improvement until February 1, 1987, and that she would then have a 5-percent permanent partial disability. However, on February 9, 1987, the examining physician stated that he saw no necessity for further chiropractic treatments and stated that at that time he could find no evidence of permanent disability. The compensation court did not err in this regard.

Plaintiff next contends that the court erred in refusing to honor any medical expenses incurred after December 1986. Plaintiff did not seek any medical treatment until more than 3 years after that date. We cannot find that the evidence in the record is insufficient, as a matter of law, to support the compensation court's finding that plaintiff did not meet her burden of proving causation for medical expenses incurred after December 1986.

Plaintiff also takes issue with the degree of disability determined by the court. We have noted that the court found that the plaintiff failed to prove causation as to the low back injury and as to treatment sought years after the work-related accident. As late as January 1989, and even after allowing for the low back injury, the chiropractor rates the plaintiff's permanent disability at 15 percent. That was the percentage of disability determined by the compensation court. The court's determination is adequately supported by the record.

Finally, plaintiff disputes the court's denial of vocational rehabilitation. The court found that plaintiff continued to work at the County Seat Lounge after the accident. There was also testimony by both vocational rehabilitation specialists that plaintiff, in the condition she was in when seen by the specialists, could perform jobs for which she had previous training and experience. Whether an injured worker is entitled to vocational rehabilitation is ordinarily a question of fact to be determined by the Workers' Compensation Court. *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991). Vocational rehabilitation may be denied where the injured

worker is able to perform work for which the worker has previous training and experience. Neb. Rev. Stat. § 48-162.01(3) (Reissue 1988); *Yager, supra*; *Martinez v. Nebraska Dupaco*, 235 Neb. 720, 457 N.W.2d 285 (1990).

In passing, we note a problem which sometimes arises when medical evidence is submitted only on reports in the Workers' Compensation Court. Plaintiff's neurologist who first examined her in December 1989 said, in part, in his December 20, 1989, report: "It's possible she may have a glass eye and a wooden leg so far as the upper extremtiy [sic] is concerned." This phrase may convey information to another doctor, or to the esoteric few, but to a trier of fact, it is meaningless. If such phrases are to be used, counsel might well furnish a translation to the fact finder or the reviewing court.

The court did not err in any of the respects alleged by plaintiff. The award of the Nebraska Workers' Compensation Court on rehearing is affirmed.

AFFIRMED.

WHITE, J., concurring.

I write to express my disapproval of the language used in the compensation court's decision, to wit, plaintiff "failed to meet her burden of proof . . . ." The phrase is obviously meant to convey that the court chose to believe one set of facts rather than another. The use of the phrase raises implicitly the possibility that the court determined that plaintiff did not produce sufficient evidence to sustain a decision if one had been found for her.

If the court has decided an issue of fact or has found the proof insufficient as a matter of law, it would be helpful if it said what was the basis of its decision, instead of leaving the reviewing court to speculate.