JAMES ROAN EAGLE, APPELLEE, V. STATE OF NEBRASKA,
APPELLANT.

468 N.W.2d 382

Filed April 25, 1991.   No. 90-459.

Robert M. Spire, Attorney General, and Douglas J. Peterson for appellant.

Leonard G. Tabor for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

The State of Nebraska appeals from an award on rehearing by the Nebraska Workers' Compensation Court in favor of James Roan Eagle. We affirm.

## STANDARD OF REVIEW

"Findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case. [Citations omitted.] In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. [Citations omitted.] Factual determinations by the Workers' Compensation Court will not be set aside on appeal unless such determinations are clearly erroneous. Regarding facts determined and findings made after rehearing in the Workers' Compensation Court, § 48-185 precludes the Supreme Court's substitution of its view of facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. [Citations omitted.] As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony."

*Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 460-61, 461 N.W.2d 565, 568 (1990). Accord, *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 423 N.W.2d 483 (1988); *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). See, also, Neb. Rev. Stat. § 48-185 (Reissue 1988).

In considering whether evidence sustains a finding for an award or dismissal by the Nebraska Workers' Compensation Court on rehearing, an appellate court does not reweigh evidence, but considers the compensation court's award or dismissal in a light most favorable to the successful party and resolves evidential conflicts in favor of the successful party,

who is entitled to every reasonable inference deducible from the evidence. Cf. *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987).

## BACKGROUND FOR ROAN EAGLE'S ACCIDENT

Before the accident, the Game and Parks Commission of the State of Nebraska had employed Roan Eagle for 4 years as a wrangler at the Fort Robinson State Park near Crawford, Nebraska. A wrangler is a cowboy in charge of saddle horses. In addition to wrangling, Roan Eagle's duties included taking "tourists out on trail rides, horse back out in the hills," tours which might last for several hours.

On June 26, 1986, Roan Eagle, on horseback, was accompanying a dozen tourist trail riders in the hills near Fort Robinson, when Roan Eagle's horse "spooked and started bucking." Roan Eagle was thrown from his horse, struck the ground, and sustained injury to his right leg, which injury produced pain in the "middle of [his] hip."

Another wrangler rode ahead to Fort Robinson. On Roan Eagle's arrival at the fort, he was transported by rescue unit to the Crawford hospital and then to the hospital at Alliance, Nebraska, for orthopedic attention.

## ROAN EAGLE'S INJURY

Dr. Chris Wilkinson, an orthopedist, attended Roan Eagle and diagnosed the injury as "a closed proximal femoral fracture which is basically an intertrochanteric subtrochanteric comminuted fracture." The femur, or thigh bone, transmits weight of a person's trunk from the hip to the lower extremities and is comprised of the femoral head, neck, two processes or prominences called the greater trochanter and lesser trochanter, and a shaft. The femoral head is smooth and globular, forming more than half a sphere, and fits into and articulates with the acetabulum, a cup-shaped formation of the hip bone, to form a ball-and-socket joint. The femur's neck lies between the femoral head and shaft. The greater trochanter is located laterally at the base of the femoral neck and slightly above the lesser trochanter on the nearly opposite side of the shaft.

On June 27, Dr. Wilkinson surgically reduced the somewhat transverse or oblique fracture of the shaft in Roan Eagle's right

femur, a fracture which was located just below the femoral neck between the trochanters. After aligning the femoral fragments, Dr. Wilkinson secured the reduction by laterally countersinking two "cortical screws" in the femur's shaft, one above and the other below the fracture. Over the cortical screws, Dr. Wilkinson laid a contoured six-hole metal plate against the femur, drilled six holes into the shaft, and inserted cortical screws through the plate into the shaft, with three screws above and three screws below the fracture. A 3³/₄-inch "lag screw" was then implanted into the femur's head and by a compression screw was tightened to extend through the femoral head and neck into the femur's shaft at the fracture site.

Roan Eagle was then transferred to the Crawford hospital and eventually returned to his home. For the remainder of 1986, Roan Eagle made monthly trips to Chadron for postoperative checkups by Dr. Wilkinson. In the course of those visits, Dr. Wilkinson noted that Roan Eagle's pain persisted in the right hip, and "fluoroscoped the hip to see if it was possible to see any position in which the leg [sic] screw protruded from the head into the joint. I could not tell on any angle or amount of rotation" that the screw had protruded into the hip joint. Roan Eagle's pain continued virtually unchanged until December 1986 when Dr. Wilkinson, without further "radiographs," rendered the assessment that Roan Eagle was "doing well as far as I can tell," although Roan Eagle had not returned to work at that time. Since Roan Eagle's hip was apparently mending, Dr. Wilkinson expressed the opinion that "it'll be a year before he is really back to normal and possibly as long as two years before he has his strength built up and can resume unlimited activities." Dr. Wilkinson recommended that Roan Eagle "not lift anything and carry only light objects."

On one of Roan Eagle's visits in the forepart of 1987, Dr. Wilkinson told Roan Eagle that he was "pretty good" and decided to leave the metal implant in Roan Eagle's femur, but suggested that Roan Eagle not do any heavy lifting. It was not until June 1988 that Roan Eagle returned to work for the State, this time as an operator of a power lawnmower, but, on account of pain from getting on and off the mower, was unable to continue this employment. His hip started "hurting [him]

more" in the last part of 1988. At that point Roan Eagle found that he was unable to walk for any appreciable distance and that his hip pain was increasing, necessitating Roan Eagle's use of a wheelchair or cane for locomotion. Roan Eagle filed his action in the Nebraska Workers' Compensation Court on June 26, 1989.

Roan Eagle then returned to Dr. Wilkinson on July 25, 1989. Dr. Wilkinson reviewed Roan Eagle's orthopedic history and noted that Roan Eagle had been unable to return to work. Also, Dr. Wilkinson concluded that, throughout his previous treatment of Roan Eagle, "[a]t no point . . . could the lag screw head be demonstrated to impinge onto the joint." During his further examination of Roan Eagle on the July 1989 visit, Dr. Wilkinson observed "some motion about the lag screw," but was unable to determine the exact extent of the lag screw's movement in the femoral head. At that point, Dr. Wilkinson became disturbed on account of Roan Eagle's persistent pain and was concerned about "penetration of the joint by the lag screw." In view of limited suitable radiographic equipment, Dr. Wilkinson suggested that Roan Eagle travel to Scottsbluff for a "CT [computerized tomography] scan of the hip" to ascertain the extent of hip damage from the lag screw. Subsequently, on September 28, 1989, Roan Eagle visited a Scottsbluff orthopedist, but when Roan Eagle was unable to provide an advance payment of $1,500 for orthopedic services, he received no further medical attention.

When the accident happened, Roan Eagle was a 53-year-old manual laborer with a 10th grade education. Although he applied for reemployment with the State, he was turned down. According to Dr. Wilkinson's evaluation on July 25, 1989, Roan Eagle sustained a "13% impairment of the whole person," a rating which was subject to revision depending on a further determination whether to retain the metallic implants, especially the lag screw which protruded into Roan Eagle's hip joint. Also, Dr. Wilkinson expressed that Roan Eagle's "impairment rating of course is not a disability rating as a patient with a small impairment may have a large disability, depending on his education and pain tolerance and the type of work that he does."

Before the rehearing on April 17, 1990, the State paid most of Roan Eagle's medical expenses and some benefits for Roan Eagle's temporary total disability. The State's last payment for Roan Eagle was made to the Crawford hospital in March 1987.

## AWARD ON REHEARING

In its amended answers, the State raised the issue of the statute of limitations expressed in Neb. Rev. Stat. § 48-137 (Reissue 1988), which, in pertinent part, states:

> In case of personal injury, all claims for compensation shall be forever barred unless, within two years after the accident, the parties shall have agreed upon the compensation payable under the Nebraska Workers' Compensation Act, or unless, within two years after the accident, one of the parties shall have filed a petition . . . . When payments of compensation have been made in any case, such limitation shall not take effect until the expiration of two years from the time of the making of the last payment. . . .

The State offered no evidence to contradict testimony from Roan Eagle's witnesses, especially the medical information from Dr. Wilkinson.

The compensation court found that Roan Eagle sustained a compensable injury on June 26, 1986. Subject to a credit for payments already made by the State, the court ordered the State to pay benefits for Roan Eagle's temporary total disability before the rehearing and so long as Roan Eagle remained "totally disabled for an indefinite future period of time." Also in its award, the Workers' Compensation Court stated:

> The principal issue herein is whether the plaintiff's claim is barred by the statute of limitations. . . . [T]he last payment of benefits . . . was made in March, 1987. . . . The plaintiff's treating doctor was Dr. Chris E. Wilkinson who treated the plaintiff until December 16, 1986 and did not see the plaintiff again until July 25, 1989. [Dr. Wilkinson] felt it would be a year before the plaintiff would really be back to normal and possibly as long as two years before the plaintiff has his strength built up and can resume unlimited activities. There is no evidence to indicate that

the plaintiff would have any permanent disability until Dr. Wilkinson's report of July 25, 1989. Since the plaintiff did file his petition within two years of the time that he again became disabled and had a claim to make, his claim is not barred by the statute of limitations.

## ASSIGNMENTS OF ERROR

In its main assignment of error, the State contends that the Workers' Compensation Court erred by finding that Roan Eagle's claim was not barred by the statute of limitations. Also, the State contends that the Workers' Compensation Court erred by awarding Roan Eagle benefits for temporary total disability beyond July 25, 1989, when Dr. Wilkinson assessed Roan Eagle's disability to the body as a whole.

Thus, the State does not contend that Roan Eagle did not sustain a compensable injury on June 26, 1986, and does not question its obligation, imposed by the award, that the State pay Roan Eagle's medical expenses and benefits for his temporary total disability before Dr. Wilkinson's evaluation on July 25, 1989.

## ROAN EAGLE'S BURDEN TO PROVE COMPENSABILITY

"[F]or an award based on disability, a claimant must establish, by a preponderance of the evidence, that the employment proximately caused an injury which resulted in disability compensable under the Workers' Compensation Act." *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 468-69, 461 N.W.2d 565, 572-73 (1990). See *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). "An employee has the burden to show the cause-and-effect relationship involving employment, an industrial injury, and disability." *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 621, 423 N.W.2d 483, 486 (1988). Accord *Rosemann v. County of Sarpy, ante* p. 252, 466 N.W.2d 59 (1991).

"Compensable disability is generally defined as inability, as the result of a work-connected injury, to perform or obtain work suitable to claimant's qualifications and training." 2 A. Larson, The Law of Workmen's Compensation § 57.22(a) at 10-129 (1989).

> An employee who is injured to the extent that the employee cannot perform services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for the services is nonexistent may be classified as totally disabled. . . . Hence, the test for a worker's employability after a compensable injury is whether the worker can compete in the open and normal labor market for the worker's services.

*Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 912, 464 N.W.2d 343, 351 (1991).

"[W]hether an injured employee has reached maximum physical recovery after medical treatment is, generally, a factual question for the Workers' Compensation Court." *Heiliger v. Walters & Heiliger Electric, Inc., supra* at 472, 461 N.W.2d at 574. "Whether a claimant has sustained disability which is total or partial and which is temporary or permanent is a question of fact." *Sherard v. Bethphage Mission, Inc., supra* at 912, 464 N.W.2d at 351.

### STATUTE OF LIMITATIONS

" 'A defendant alleging the statute of limitations as an affirmative defense has the burden to prove such defense.' " *Millman v. County of Butler*, 235 Neb. 915, 935, 458 N.W.2d 207, 219 (1990) (quoting from *League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849 (1985)). Accord *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988); *Van Burg v. Van Engen*, 76 Neb. 816, 107 N.W. 1006 (1906).

### THE NATURE OF ROAN EAGLE'S INJURY

In *Williams v. Dobberstein*, 182 Neb. 862, 865, 157 N.W.2d 776, 778-79 (1968), this court stated that "[p]ain alone is not compensable under our statute, and disability is the basic factor which gives rise to a claim for compensation." Accordingly, a claimant must give notice and file a petition " 'within the statutory period after he had knowledge that compensable disability resulted from the original accident.' " *Williams, supra* at 865, 157 N.W.2d at 778 (quoting *Welke v. City of Ainsworth*, 179 Neb. 496, 138 N.W.2d 808 (1965)). Accord *Borowski v. Armco Steel Corp.*, 188 Neb. 654, 198 N.W.2d 460 (1972).

Our review of Nebraska decisions indicates that Roan Eagle's case appears to be the first instance for this court's consideration of the question whether medical treatment for an initial and compensable injury may result in a subsequent compensable injury under the Nebraska Workers' Compensation Act.

No one doubts that Roan Eagle sustained a serious work-related injury on June 26, 1986, and required the orthopedic care and treatment rendered by Dr. Wilkinson. Although Roan Eagle experienced leg pain during his postoperative visits to Dr. Wilkinson in 1986, nothing in Dr. Wilkinson's observations, including radiographic examinations, indicated that Roan Eagle's fractured femur, supported by the metallic implants, was not knitting in the best medical expectations. Consequently, Dr. Wilkinson expressed the orthopedic belief, imparted to Roan Eagle, that the femur was mending, although Roan Eagle's recuperation might last as long as 2 years. That medical optimism was reaffirmed in 1987 when Dr. Wilkinson decided to leave the implants in Roan Eagle's femur, but cautioned Roan Eagle against heavy lifting. Throughout this time, according to Dr. Wilkinson, a radiographic examination of Roan Eagle's hip would not have disclosed any movement or rotation by the lag screw in the femoral head. However, when pain compelled Roan Eagle to return to Dr. Wilkinson, the physician was concerned about the persistent pain in the area of Roan Eagle's hip and, on examination of radiographic films of the fracture site on June 26, 1989, discovered that the previous expectations of a good medical result from the metallic implants had vanished. There was "motion about the lag screw," which accounted for the lag screw's protrusion into Roan Eagle's hip joint. Even then, with his limited radiographic equipment, Dr. Wilkinson was unable to ascertain the exact extent of the painful protrusion; hence, Dr. Wilkinson suggested computerized tomography for Roan Eagle to obtain a complete and precise picture of the now-evident injury. At that point and for the first time, Dr. Wilkinson estimated Roan Eagle's disability as "13% impairment of the whole person," with the proviso that his impairment rating might be revised in light of future surgery

involving the metallic implants.

Professor Larson has noted that it is "uniformly held that aggravation of the primary injury by medical or surgical treatment is compensable." 1 A. Larson, The Law of Workmen's Compensation § 13.21(a) at 3-574 to 3-575 (1990). Larson further comments: "Fault on the part of the physician . . . even if it might amount to actionable tortiousness, does not break the chain of causation." 1 A. Larson, *supra*, § 13.21(b) at 3-584. See, also, 82 Am. Jur. 2d § 337 (1976).

Courts in several jurisdictions have expressed that, as a general rule, an employee may recover compensation for a new injury, or aggravation of an injury, which results from medical or surgical treatment of the employee's compensable injury if an intervening independent cause does not break the chain of causation between the employee's original injury and the new or aggravated injury; for example, see, *Roberts v. Krupka*, 246 Kan. 433, 790 P.2d 422 (1990); *Martin v Ford Motor Co*, 401 Mich. 607, 258 N.W.2d 465 (1977); *Turner v. Guiliano*, 350 Mass. 675, 216 N.E.2d 562 (1966); *Yount v. United Fire & Casualty Co.*, 256 Iowa 813, 129 N.W.2d 75 (1964); *Matter of Kestenbaum v. Dunrite Painting Co.*, 10 N.Y.2d 838, 178 N.E.2d 430, 221 N.Y.S.2d 728 (1961); *Ortkiese v. Clarson & Ewell Engineering*, 126 So. 2d 556 (Fla. 1961); *Shortridge v. Bede*, 51 Wash. 2d 391, 319 P.2d 277 (1957); *Heaton v. Kerlan*, 27 Cal. 2d 716, 166 P.2d 857 (1946); *Matter of Compensation of Sparks*, 60 Or. App. 397, 653 P.2d 1002 (1982); *American Smelting & Refining Co. v. Industrial Com'n*, 25 Ariz. App. 532, 544 P.2d 1133 (1976). Consequently, we now hold that, as a general rule, an employee may recover compensation for a new injury, or aggravation of an injury, which results from medical or surgical treatment of the employee's compensable injury if an intervening independent cause does not break the chain of causation between the employee's original injury and the new or aggravated injury.

Since Roan Eagle's disability, established on July 25, 1989, was directly traceable to the femoral injury on June 26, 1986, there is an unbroken chain of causation between the original injury and the eventual disability from Roan Eagle's hip injury. The medical evidence supports a conclusion that Roan Eagle's

disability, discovered in July 1989, resulted from medical or surgical treatment of Roan Eagle's compensable injury. Thus, the State failed to prove that Roan Eagle's petition was untimely filed after the established existence of Roan Eagle's disability. Consequently, the findings by the Nebraska Workers' Compensation Court are not clearly erroneous and are sustained under the record.

## BENEFITS PAYABLE TO ROAN EAGLE

Apparently alluding to Roan Eagle's abortive effort to work for the State as an operator of a power lawnmower and Dr. Wilkinson's reference to Roan Eagle's disability as a "whole person," the State argues that the Workers' Compensation Court erred in awarding Roan Eagle benefits for total disability after July 25, 1989, the date of Dr. Wilkinson's evaluation of Roan Eagle's injury and disability.

Bearing in mind that Roan Eagle was a wrangler, we fail to see any similarity between a power lawnmower and a horse. Even though horses eat hay, sitting astraddle those animals is anything but soft. With the left foot in a stirrup, swinging the right leg over a horse's back and settling into the saddle for hours of riding does place a strain on a rider's legs and hips and is far more physically strenuous than doing a turn around the turf on a power mower.

Dr. Wilkinson has displayed a keener insight into the Nebraska Workers' Compensation Act than has the State, for he recognized that a physical "impairment rating . . . is not a disability rating as a patient with a small impairment may have a large disability, depending on his education and pain tolerance and the type of work that he does." Dr. Wilkinson's observations about a disability coincide with this court's expressions concerning compensable total disability. See *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 464 N.W.2d 343 (1991). Moreover, in reference to disability, we have stated that an employee's disability "is not necessarily determined by a physician's evaluation and assessment of the employee's loss of bodily function." *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 470, 461 N.W.2d 565, 573 (1990). Accord *Sherard v. Bethphage Mission, Inc., supra.* In view of the record and the

standard of review for this court, we cannot conclude that the Nebraska Workers' Compensation Court, as the sole judge of witness credibility and the weight to be given a witness' testimony, was clearly erroneous in its finding that Roan Eagle is presently totally disabled and entitled to periodic payments for total disability until there is a determination whether Roan Eagle has sustained a permanent impairment of earning power or earning capacity on account of any disability to his body as a whole. See Neb. Rev. Stat. § 48-121(1) and (2) (Reissue 1988). In the course of periodic payment of benefits to Roan Eagle, the State may seek a modification of the award if there is information justifying a modification. See Neb. Rev. Stat. § 48-141 (Reissue 1988). In the meantime, the anatomical fact remains: In the design of the articulating surfaces of the human hip, there is no tolerance for a protruding lag screw.

## ATTORNEY FEE

The award of the Nebraska Workers' Compensation Court is supported by the evidence, is not clearly erroneous, and is, therefore, affirmed. Since the State of Nebraska has failed to reduce the amount of Roan Eagle's award reviewed in this appeal, we order the State of Nebraska to pay Roan Eagle $3,000 to be applied toward the fee of Roan Eagle's lawyer for services in this court. See Neb. Rev. Stat. § 48-125(1) (Reissue 1988) (attorney fee for employee when employer appeals and fails to obtain a reduction of an award to the employee).

AFFIRMED.