JUNE THILKING, APPELLANT, V. THE TRAVELERS INSURANCE
COMPANY, APPELLEE.
482 N.W.2d 548
Filed March 13, 1992.   No. S-91-410.

Ronald H. Stave, of Stave & Coffey, P.C., for appellant.

Theodore J. Stouffer, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

June Thilking appeals from the order on rehearing in the Nebraska Workers' Compensation Court dismissing Thilking's action as the widow of William Thilking, a former employee of The Travelers Insurance Company. We affirm.

## STANDARD OF REVIEW

Findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case. In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence

must be considered in the light most favorable to the successful party. Factual determinations by the Workers' Compensation Court will not be set aside on appeal unless such determinations are clearly erroneous. Regarding facts determined and findings made after rehearing in the Workers' Compensation Court, Neb. Rev. Stat. § 48-185 (Supp. 1991) precludes an appellate court's substitution of its view of facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony. See, *Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 472 N.W.2d 727 (1991); *Roan Eagle v. State*, 237 Neb. 961, 468 N.W.2d 382 (1991); *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990); § 48-185.

In considering whether evidence sustains a finding for an award or dismissal by the Nebraska Workers' Compensation Court on rehearing, an appellate court does not reweigh evidence, but considers the compensation court's award or dismissal in a light most favorable to the successful party and resolves evidential conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

*Roan Eagle v. State*, 237 Neb. at 962-63, 468 N.W.2d at 384-85. Accord *Schmid v. Nebraska Intergov. Risk Mgt. Assn.*, 239 Neb. 412, 476 N.W.2d 243 (1991).

## BACKGROUND FOR THILKING CLAIM

June Thilking is the widow of William Thilking, a former employee of The Travelers Insurance Company since 1983, who worked in Omaha, Nebraska, as the life, health, and financial services manager in Travelers' Omaha territory. William Thilking organized and coordinated Travelers' marketing strategy for the Omaha territory, which included Nebraska, Iowa, and South Dakota. On May 20, 1989, William Thilking, after a full day's preparatory study, took an examination at completion of the last in a series of insurance courses designed to maintain his proficiency in the insurance industry.

On May 24, 1989, William Thilking drove from Omaha to Rapid City, South Dakota, for meetings on May 25 and 26 with employees and customers of Kluthe & Lane Insurance agency concerning insurance and estate planning matters, and to recognize Kluthe & Lane for its service to Travelers.

William Thilking's schedule for May 26 indicates that he had arranged Travelers-related activities which commenced at 8:30 a.m. with Thilking's attendance at a breakfast meeting. Later in the day, Thilking toured Mount Rushmore, where he met a potential customer and discussed insurance business, and ended the day with an evening dinner party at which he participated in entertainment by playing the guitar and singing.

Shortly after 9 a.m. on May 27, William Thilking left Rapid City and started to drive back to Omaha. At approximately 3 p.m. on May 27, William Thilking was discovered in his automobile near Ainsworth, Nebraska. Thilking's vehicle was undamaged in a ditch and had its engine running with the transmission in "drive" when a Brown County deputy sheriff arrived at the scene in response to an emergency call. An ambulance transported William Thilking to the Brown County Hospital, where he was examined by Dr. Melvin Campbell, who concluded that Thilking died before arrival at the hospital. According to the death certificate signed by Dr. Campbell, the cause of William Thilking's death was "cardiac arrest." Also, on the death certificate Dr. Campbell noted that the "[i]nterval between onset and death" was "immediate." Under the death certificate heading "OTHER SIGNIFICANT CONDITIONS - Conditions contributing to death but not related," Dr. Campbell wrote "hypertension." There was no autopsy on William Thilking.

## REHEARING IN NEBRASKA WORKERS' COMPENSATION COURT

June Thilking, as the widow of William Thilking, sued Travelers in the Workers' Compensation Court and claimed that William Thilking, on May 27, 1989, sustained personal injury in an accident arising out of and in the course of his employment by Travelers, namely, William Thilking "suffered a cardiac arrest" on his trip from Rapid City for return to

Omaha. June Thilking contends that the work-related activities of William Thilking produced stress sufficient to result in myocardial infarction. Myocardial infarction is gross necrosis of the myocardium, the middle and thickest layer of the heart wall composed of cardiac muscle, which necrosis results from interruption of the blood supply, such as in coronary thrombosis or occlusion of a coronary artery. Dorland's Illustrated Medical Dictionary 834, 1089 (27th ed. 1988); Stedman's Medical Dictionary 780 (25th ed. 1990).

Nothing in William Thilking's medical history indicated any particular cardiac problem, although he was overweight and had an elevated serum cholesterol with blood pressure readings which fluctuated between normal and high. Since William Thilking had a history of high blood pressure dating back to 1983, he was taking medication to control his elevated blood pressure. In the 2 years before his death, William Thilking had two electrocardiograms that revealed normal heart activity and presented no evidence of heart damage or cardiac problems.

To support her claim, June Thilking offered testimony from Dr. Stephen Carveth, a cardiovascular and thoracic surgeon. Dr. Carveth testified that "cardiac arrest" and "myocardial infarction" are not synonymous and are not interchangeable descriptions of the same cardiac condition. As Dr. Carveth explained, a myocardial infarction "is the term which basically means death of a segment of [heart muscle] or the entire heart," whereas "[c]ardiac arrest is the term used by Heart Association standards as the sudden and unexpected cessation of breathing and heartbeat." Dr. Carveth expressed his opinion that William Thilking's "stress related job was a major factor and the most likely cause of his death being a myocardial infarction." Dr. Carveth supported his opinion by reference to several factors: William Thilking, 55 years of age, had been under stress in his employment with Travelers. On the Rapid City trip, Thilking participated in 2 days of business meetings and entertainment activities. William Thilking was found dead in his car, which was in a ditch by the side of the road, with the automobile's transmission locked in the drive position without any evidence that the automobile had been in any type of collision. As Dr. Carveth expressed: "Based, again, on Heart Association

statistics and my own practice of medicine and surgery, a 55-year-old man who was dedicated to his job, who was under a great deal of stress, I believe, the most likely cause of death in this individual is myocardial infarction." Dr. Carveth was aware that William Thilking had been classified as obese and suffered from high blood pressure dating back to 1983, and concluded that "[n]othing in the records . . . clearly indicate[s]" that William Thilking had a previously weakened or diseased heart. Referring to possible causes for cardiac arrest, that is, other than myocardial infarction, Dr. Carveth acknowledged that other causes might be a "stroke" or "a litany of other causes . . . a whole raft of causes that is clumped under the title of cardiac dysrhythmia."

Dr. Michael Hugh Sketch testified for Travelers concerning causation for William Thilking's death. Dr. Sketch is a cardiologist who is a professor of medicine and chief of the cardiology department at Creighton University. Dr. Sketch reviewed several of the "cardiac risk factors" for Thilking's suffering a cardiovascular disease, factors such as Thilking's high cholesterol, obesity, and high blood pressure. Although Dr. Sketch agreed with Dr. Carveth that William Thilking's "death was one of cardiac arrest," Dr. Sketch stated that "the question is as to what caused that cardiac arrest, whether it was a myocardial infarction or whether it was not is a whole other matter." Dr. Sketch concluded that there was no medical evidence to substantiate that

> Mr. Thilking suffered a myocardial infarction. In fact, he had a cardiac arrest is a foregone conclusion because he did suffer unequivocally with sudden cardiac death. And this was due to an arrythmia. . . . Now, whether that was due to a myocardial infarction is a matter of pure conjecture anyway. But statistically it's not a high probability that it was.

Cardiac arrythmia is any variation from the normal rhythm of the heartbeat, that is, a loss of rhythm, denoting especially an irregularity of the heartbeat. Dorland's Illustrated Medical Dictionary 127 (27th ed. 1988); Stedman's Medical Dictionary 120 (25th ed. 1990). Dr. Sketch disagreed with Dr. Carveth's opinion that myocardial infarction caused William Thilking's

death and based his disagreement on the medical fact that myocardial infarction is "caused by a blood clot forming within a coronary artery, one of the arteries that supplies the heart with blood. . . . [T]here is at this time no evidence that this clot formation can be caused by or is caused by emotional or physical stress." Dr. Sketch acknowledged that his view of emotional or physical stress in relation to myocardial infarction may not be universally accepted by cardiologists. Additionally, in reference to myocardial infarction and William Thilking's death, Dr. Sketch testified that "the prevalence of a myocardial infarction in people who suffer this kind of death is very low. So you can say that is one thing which would point against a myocardial infarction."

In its order of dismissal, the compensation court concluded that

no autopsy was performed on the decedent and the actual cause of death can only be deduced by conjecture by both Dr. Carveth and Dr. Sketch. Although both Dr. Sketch and Dr. Carveth believed the decedent had died of a heart attack, there is no indication as to the specific type or cause of the heart attack such as myocardial infarction, severe coronary artery disease, or arrythmia. Both expert witnesses stated that there were other things that could cause a heart attack such as a stroke.

### ASSIGNMENTS OF ERROR

June Thilking's assignments of error may be distilled into the following: The Workers' Compensation Court erred in finding that William Thilking's death from a "heart attack" was noncompensable under the Nebraska Workers' Compensation Act.

### CLAIMANT'S BURDEN OF PROOF

Neb. Rev. Stat. § 48-151(2) (Reissue 1988) in part provides that in all workers' compensation cases, an "accident" shall mean "an unexpected or unforeseen injury happening suddenly and violently . . . and producing at the time objective symptoms of an injury. The claimant shall have a burden of proof to establish by a preponderance of the evidence that such unexpected or

unforeseen injury was in fact caused by the employment." *Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 854, 472 N.W.2d 727, 730 (1991).

"For an award based on an employee's death, a claimant must establish, by a preponderance of the evidence, that the employment proximately caused an injury which resulted in death compensable under the Nebraska Workers' Compensation Act." *Rosemann v. County of Sarpy*, 237 Neb. 252, 257, 466 N.W.2d 59, 62 (1991). Cf. *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 467, 461 N.W.2d 565, 571-72 (1990):

> [A] claimant is entitled to an award under the Workers' Compensation Act for a work-related injury and disability if the claimant shows, by a preponderance of the evidence, that the claimant sustained an injury and disability proximately caused by an accident which arose out of and in the course of the claimant's employment . . . .

Accord *Tarvin v. Mutual of Omaha Ins. Co., supra.*

> "In cases under the compensation act involving heart attacks, the principal issue is usually one of causation. The disability or death is not compensable unless the injury or death arose out of the employment. There is no fixed formula by which the issue may be resolved and the issue must be determined by the facts of each case."

*Mann v. City of Omaha*, 211 Neb. 583, 591-92, 319 N.W.2d 454, 458 (1982) (quoting from *Sellens v. Allen Products Co., Inc.*, 206 Neb. 506, 293 N.W.2d 415 (1980)). Accord *Leitz v. Roberts Dairy*, 237 Neb. 235, 465 N.W.2d 601 (1991).

> Unless the character of an injury is objective, that is, an injury's nature and effect are plainly apparent, an injury is a subjective condition, requiring an opinion by an expert to establish the causal relationship between an incident and the injury as well as any claimed disability consequent to such injury.

*Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 785, 408 N.W.2d 280, 289 (1987). Accord, *Tarvin v. Mutual of Omaha Ins. Co., supra*; *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 423 N.W.2d 483 (1988).

"Determination of causation is, ordinarily, a matter for the

trier of fact." *Mendoza v. Omaha Meat Processors*, 225 Neb. at 778, 408 N.W.2d at 285. Accord *Tarvin v. Mutual of Omaha Ins. Co., supra.*

## DISCUSSION

Although the physicians testifying in the Thilking case concurred that William Thilking suffered "cardiac arrest," or, more simply, Thilking's heart stopped beating, the question in its most fundamental form is: What caused William Thilking's heart to stop beating, resulting in his death?

Medical evidence in the Thilking case establishes that although William Thilking had some risk factors which may have affected his cardiac arrest, he did not suffer from a previously diseased or weakened heart. As noted by Professor Arthur Larson:

> If there is no personal causal contribution, that is, if there is no prior weakness or disease, any exertion connected with the employment and causally connected with the collapse as a matter of medical fact is adequate to satisfy the legal test of causation. This is the heart-case application of the actual risk test: This exertion in fact causally contributed to this collapse.

(Emphasis omitted.) 1B Arthur Larson, The Law of Workmen's Compensation § 38.83(b) (1991).

To paraphrase the conclusion of the Nebraska Workers' Compensation Court, all medical evidence in Thilking's case establishes the fact that William Thilking died of cardiac arrest on May 27, 1989. Testimony of Drs. Carveth and Sketch indicates that there are a "litany" of possibilities and a "whole raft" of causes for William Thilking's cardiac arrest. The only connection between William Thilking's death and his employment is that he was returning to Omaha from a business trip. "The combination of employment and a heart attack is insufficient in itself to entitle one to workmen's compensation benefits." *Reis v. Douglas County Hospital*, 193 Neb. 542, 549, 227 N.W.2d 879, 884 (1975).

Although Dr. Carveth expressed his opinion that William Thilking died from a stress-caused myocardial infarction, Dr. Sketch specifically disagreed with Dr. Carveth's conclusion and

stated that medical data was insufficient to "substantiate . . . that Mr. Thilking suffered a myocardial infarction." While Dr. Sketch expressed the view that clot formation, present in myocardial infarction, is not caused by emotional or physical stress, a view that may not be shared throughout the complete community of cardiologists, Dr. Sketch's opinion regarding causation, nonetheless, was placed before the compensation court. Thus, although the testifying physicians agreed that there are numerous factors which may precipitate or affect a cardiac problem, such as myocardial infarction, severe coronary artery disease, or arrythmia, the Workers' Compensation Court concluded that the evidence failed to supply a sufficient basis to determine that William Thilking died from a stress-caused myocardial infarction attributable to Thilking's employment with Travelers. "A fact finder or trier of fact may accept or reject an opinion from an expert witness." *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 474, 461 N.W.2d 565, 575 (1990). "We have repeatedly held that where the record presents nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the compensation court." *Zaleski v. Farmland Foods*, 219 Neb. 157, 161, 361 N.W.2d 523, 526 (1985). Accord *Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 472 N.W.2d 727 (1991).

We note the absence of an autopsy as a source of information concerning William Thilking's death and the compensation court's language in its finding "the actual cause of [William Thilking's] death can only be deduced by conjecture . . . ." In view of the preceding expression by the compensation court, June Thilking suggests that the compensation court requires an autopsy to sustain a workers' compensation claim based on an employee's death when the cause of death is not immediately discernible or, perhaps, even in situations where the cause of death seems readily apparent. The compensation court unfortunately employed imprecise terminology which may be construed as saying that an expert witness' opinion on cause of death is rendered absolute surmise without an autopsy and, in the absence of an autopsy, any opinion on causation of death is "deduced by conjecture."

In *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 910, 464 N.W.2d 343, 349 (1991), we again called attention to Neb. Evid. R. 1101(4)(d), Neb. Rev. Stat. § 27-1101(4)(d) (Reissue 1989), which exempts proceedings in the Nebraska Workers' Compensation Court from applicability of the Nebraska Evidence Rules, that is, "[T]he Nebraska Evidence Rules do not apply to 'proceedings before the Nebraska Workers' Compensation Court . . . .' " See, also, *Schillereff v. Independent Plumbing & Heating*, 237 Neb. 424, 466 N.W.2d 99 (1991). Further, we bear in mind and reemphasize that the Nebraska Workers' Compensation Court cannot utilize evidential standards more restrictive than the Nebraska Evidence Rules. See *Fite v. Ammco Tools, Inc.*, 199 Neb. 353, 258 N.W.2d 922 (1977). Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1989) states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

An expert's opinion is the witness' view or expression of thought on a particular matter. As evidenced in many instances, experts on the question of causation for death frequently express opinions without reference to a postmortem examination. Presence or absence of a postmortem examination, or autopsy, may have a bearing on a witness' credibility or affect weight to be given to testimony or other evidence on the question of causation for a death. Therefore, while a postmortem examination may supply information for a medical expert's opinion concerning a cause of death, a postmortem examination, or autopsy, is not an indispensable prerequisite to an expert's opinion within the province of the witness' expertise. Drs. Carveth and Sketch had medical data for their opinions on the cause of William Thilking's death and, therefore, did not indulge in conjecture, that is, express a conclusion reached without sufficient data, evidence, or information.

Consequently, as we construe the expression of the compensation court in reference to the absence of an autopsy,

perhaps a postmortem examination might have provided additional information as an objective basis for a medical opinion on causation for William Thilking's death. However, in view of the record, that is, the presence and absence of evidence, the compensation court gave greater weight to the opinion expressed by Dr. Sketch that myocardial infarction was not the cause of death, as contended by June Thilking, especially since both Drs. Carveth and Sketch agreed that, besides myocardial infarction, "there were other things that could cause a heart attack such as a stroke." Therefore, the compensation court decided that June Thilking had failed to establish, by a preponderance of evidence, that William Thilking's employment with Travelers proximately caused injury which resulted in death compensable under the Nebraska Workers' Compensation Act. See *Rosemann v. County of Sarpy*, 237 Neb. 252, 466 N.W.2d 59 (1991).

## CONCLUSION

Accordingly, the Nebraska Workers' Compensation Court was not clearly erroneous in its finding that William Thilking's employment did not cause the cardiac arrest resulting in his death.

AFFIRMED.