LANDRY, Judge.
Plaintiff, a -“heavy rigger boilermaker” takes this appeal from the judgment of the trial court awarding him total permanent disability benefits by virtue of injury to plaintiff’s left index and middle fingers, the award being conditioned upon appellant submitting to an operation within thirty days. Plaintiff complains solely of the condition imposed by the lower court. Defendants, H. E. Wiese, Inc., plaintiff’s employer (Wiese), and its insurer, Hartfort Accident and Indemnity Company (Hartford), have answered the appeal contending plaintiff is entitled to benefits only for specific disability of • the injured fingers. In this regard defendants contend plaintiff has already been paid benefits exceeding the amount due for specific disability and should be decreed entitled to no further benefits. Alternatively, defendants argue that if plaintiff be found totally and permanently disabled, he be required to submit to' the operation ordered by the trial court and, in default of such compliance, that he be denied all further benefits. In *408 the further alternative, defendants aver plaintiff’s failure to suspensively appeal the judgment of the trial court, coupled with his refusal to undergo the operation ordered, has resulted in the forfeiture of all benefits. We find the judgment of the trial court correct and affirm it.
It is undisputed that plaintiff, who is right handed, sustained a disabling injury to the mentioned fingers while employed by Wiese as a boilermaker February 13, 1967.
Plaintiff testified he sought medical aid of Dr. M. J. Rathbone on the day of the accident. He stated Dr. Rathbone X-rayed the injured hand and placed plaintiff’s arm in a short cast. Plaintiff also stated that after 7 or 8 visits to Dr. Rathbone for therapy, Dr. Rathbone referred plaintiff to Dr. Willard Dowell, an orthopedic specialist. According to plaintiff, he consulted Dr. Dowell six times and underwent physical therapy under Dr. Dowell’s supervision. He also stated that Dr. Dowell referred him to Dr. Daniel C. Riordan. Plaintiff maintained that despite treatment, he is unable to grip with his left index and middle fingers. Plaintiff asserted the impediment prevented his fulfilling the duties of a heavy rigger boilermaker. Plaintiff acknowledged that since the accident he has been employed as a boilermaker on six different jobs. He noted, however, that in these instances he performed the services of a flagman whose duties are essentially that of directing the operators of rigs and cranes used in the movement and placement of vessels and equipment handled' by boilermakers. He also stated that after the accident he was employed as foreman on several jobs in which capacity his duties were merely supervisory and consisted of reading blueprints and instructing other boilermakers what to do. As foreman he is required to handle no tools and do no climbing. Plaintiff further stated that because of the condition of his hand, he has since lost work at times because of his inability to fully perform as a boilermaker. He stated that when he could not get light duty or a foreman’s job, he was passed up for hiring. Plaintiff acknowledged that Dr. Riordan had advised him an operation would assure virtual 100% of use of plaintiff’s injured hand. Plaintiff based his refusal to submit to surgery on the basis of unfavorable results experienced by others having similar operations, including plaintiff’s wife and acquaintances. In addition, plaintiff based his refusal on the economic loss he would sustain during the recuperation period.
Dr. M. J. Rathbone testified that he first treated plaintiff on Fébruary 13, 1967. He initially observed swelling of the back of plaintiff’s left hand. X-ray examination disclosed an oblique fracture of the fourth metacarpal with slight separation overlapping. He applied a short arm cast to plaintiff’s left arm. On March 28, 1967, Dr. Rathbone observed the fracture was slow in healing and plaintiff was experiencing pain in the second and third metacarpal joints. At this time Dr. Rathbone referred plaintiff to Dr. J. Willard Dowell, an Orthopedic Surgeon. Dr. Rathbone explained that at this juncture Dr. Dowell assumed responsibility for plaintiff’s treatment although Dr. Rathbone rendered a physiotherapy treatment in his office on April 3, 1967.
Dr. Dowell testified he first saw plaintiff on March 28, 1967, and observed the following symptoms: (1) Swelling and tenderness over the metacarpo-phalangeal joints of the index and middle fingers of the left hand; (2) drift to the middle finger side upon plaintiff attempting to close his fingers; (3) limitation of motion in that plaintiff’s left middle and index fingers would not close completely; (4) tenderness in the fracture area, and (S) swelling and tenderness over the back of the left wrist. On this occasion Dr. Dowell prescribed internal medication and use of a rigid leather wrist support. In May, 1967, Dr. Dowell provided plaintiff with a knuckle bender splint. He treated plaintiff through July, 1967, and then referred plaintiff to Dr. Daniel Riordan, a hand special *409 ist. Dr. Dowell was of the opinion plaintiff could not grip small objects with his left hand. He was also of the opinion plaintiff would experience pain upon maximum use of the injured hand and that there was some loss of dexterity in the hand. Dr. Dowell rated the disability of the index finger at 30% to 40% and that of the middle finger at 35%. He believed plaintiff could lift and climb in industrial work but not with the same measure of safety as before the accident.
Dr. Riordan noted that when plaintiff made a fist the tips of the index and middle fingers lacked one inch of touching the palm of the hand due to extensor tendon shortening. He also noted that the index and middle fingers rotated and scissored when plaintiff attempted to make a fist. The latter condition was attributed to the fact that the radial collateral ligaments of the affected fingers were either detached or had healed in a lengthened position. An X-ray by Dr. Riordan revealed an oblique fracture of the left fourth metacarpal with slight volar angulation and shortening and a bony prominence of the second and third metacarpal heads, indicating ruptured ligaments and capsule. It was the doctor’s opinion that plaintiff had ruptured the ligaments on this index and middle fingers. He was of the further opinion that with plaintiff’s hand in this condition, plaintiff could not grip objects as small as V2 inch to % inch in diameter. The doctor also recommended that plaintiff not climb in his present condition. He estimated plaintiff’s disability at 15% to 20% of the left hand.
In Dr. Riordan’s opinion, only surgery could restore full motion to the affected member so that plaintiff could make a fist. The procedure, hé explained, would consist of an intrinsic release and collateral ligament release. Success of the operation, he opined, would depend 50% upon surgical skill and 50% upon the patient’s cooperation in required post-operative physiotherapy. Dr. Riordan noted that the recommended surgery, performed under local anesthesia, has a 95% chance of being successful, and under no circumstances could it worsen the condition of plaintiff’s hand. He explained that the hand would be placed in a cast for three or four weeks, -a knuckle bender would be applied and plaintiff given physical therapy for approximately six weeks. Dr. Riordan also stated plaintiff should be able to resume his former employment in about four months but would experience some joint discomfort for a period of six to twelve months. In Dr. Riordan’s opinion, plaintiff could reasonably anticipate reduction of his hand disability to between 3% and 5% with no substantial danger to plaintiff’s physical welfare.
Oscar Adams, President and Assistant Business Agent of plaintiff’s local union, testified he is dispatcher for the boilermaker’s union. He stated he has on several occasions declined to send plaintiff out on available jobs because of the condition of plaintiff’s hand. He also testified heavy rigging is dangerous, especially for an individual with any type of handicap; for that reason he has not sent plaintiff out on any jobs involving heavy rigging. Mr. Adams testified there are numerous categories of boilermakers such as fitters, riggers, corkers, shippers and grinders, all involving the use of tools. He also stated plaintiff is experienced in each classification.
A worker is permanently and totally disabled when his injuries incapacitate him from performing work of the same or similar nature which he is accustomed to performing. Knispel v. Gulf States Utilities Company, 174 La. 401, 141 So. 9. In his treatise Louisiana Workmen’s Compensation Law and Practice, page 332, Sec. 274, Professor Malone frames the test for determining permanent and total disability where a worker, as in this case, continues his former trade, as follows:
“Where the employee can perform some but not all the duties incident to his former occupation the prevalent attitude is that those tasks he cannot do must constitute a substantial part of his work *410 before he can be regarded as totally disabled.”
The evidence supports the conclusion plaintiff can no longer perform as a heavy rigger. Plaintiff so testified. Mr. Adams, President of the Boilermaker’s Union, stated he declined to employ plaintiff as a heavy rigger because of the danger involved. Dr. Dowell’s testimony establishes a loss of manual dexterity affecting plaintiff’s ability to climb in safety. Dr. Rior-dan’s testimony is that it would be unwise for plaintiff to climb with his existing handicap. We find plaintiff as disabled as a heavy rigger boilermaker.
Unquestionably plaintiff is skilled in other aspects of the boilermaker craft. These other classifications, however, involve the use of hand tools and some degree of climbing ability. We find it significant that plaintiff is unable to grasp tools of % inch to '% inch diameter with his left hand. This will undoubtedly affect his ability to operate in areas other than heavy rigging. It is also significant that plaintiff’s employment since the accident has been as flagman and foreman, neither of which involve climbing or the use of hand tools. We cannot conclude, merely on the basis that plaintiff is skilled in other aspects of the boilermaker craft, that he can efficiently perform work similar to that in which he was engaged prior to the accident. Moreover, we find that because plaintiff can neither climb nor handle small tools, the tasks which he can no longer perform constitute a substantial' part of his ability to engage in the boilermaker class. The trial court so held. We concur in the finding. We deem plaintiff totally and permanently disabled.
• It is settled that our courts may order workmen’s compensation benefits withheld from an employee who unreasonably refuses to submit to surgery which will remove his disability. Borders v. Lumbermens Mutual Casualty Co., 90 So.2d 409; Coine v. Smith, et al., 100 So.2d 902; Sum-rall v. J. C. Penney Company, et al., 239 La. 762, 120 So.2d 67. In Coine v. Smith, above, the criteria of unreasonableness in such instances is stated as follows:
“1. Can it be reasonably assumed that the operation will relieve the situation and permit the claimant to resume the type of work he was performing at the time of the accident?
“2. Will the operation submit the claimant to a minimum of danger and be in no sense dangerous to his life or be attended by no unusual risks and is it attended with but slight pain?
“3. Is there no serious disagreement among the surgeons as to the necessity for the operation or the type of operation to be performed, and the probability that the disability will be cured without recurrence ?”
The Court, in Coiné, above, further explained the criteria therein set forth as follows:
“To reiterate what we stated in the Borders case, the question before us is not whether it would be more sensible for the employee to submit to the corrective surgery ■ tendered, and it is not whether the surgery in question would more probably than not cure or lessen the injured employee’s disability. * * * The legal question before us is whether, judged by the criteria set forth above, the injured employee’s refusal to accept the operation tendered is so unreasonable, under the circumstances of the case, as to permit an order relieving the defendants of their obligation to pay compensation otherwise due during the employee’s disability.”
It will be recalled that Dr. Riordan felt the proposed surgery had a 95% chance of achieving virtual complete success in that it would reduce plaintiff’s disability to 3% to 5% and would enable plaintiff to return to work as a heavy rigger. It is reasonable to assume, therefore, the oper *411 ation will return plaintiff to his former employment. Dr. Riordan’s testimony also establishes the surgery will involve minimal risk because it could be performed under local anesthesia and would not worsen plaintiff’s condition. Concededly, the procedure would produce some wrist pain for from six to twelve months. This would appear relatively insignificant considering plaintiff could be expected to resume his former work within three or four months of the operation. We find the operation would involve only a minimum danger to plaintiff, no unusual risks and negligible postoperative pain. We note that in Duplechien v. State Exploration Company, et al., 94 So.2d 460, surgical removal of'% inch of the inner bone of the right forearm was not deemed too dangerous or painful to be ordered by judicial decree. As to the third criteria, the necessity for the operation is amply demonstrated and there is no indication of a recurrence of the disability. For plaintiff to decline the operation would be so unreasonable as to justify relieving the employer of liability for compensation benefits.
Plaintiff’s failure to submit to surgery within the thirty day period decreed below is not fatal to his cause. The Duplechein case, above, establishes that enforcement of the penalty imposed for such refusal must await full appellate review of the facts. The rationale of the rule is judicial application of equitable principles. Application of the rule requires full judicial opportunity (including appellate review) for the accused to test the reasonableness of his refusal.
We find that the thirty day period imposed herein was not in itself unreasonable. The judgment rendered below was erroneous in that it failed to suspend its enforcement until its finality, either in the trial court or upon appellate review.
It is ordered, adjudged and decreed that plaintiff, Jules A. Castille, be and he is hereby found and declared totally and permanently disabled to perform the duties of boilermaker, and, as such, entitled to workmen’s compensation benefits payable by defendants, H. E. Wiese, Inc. and Hartford Accident and Indemnity Company, in the sum of $35.00 weekly, not exceeding 400 weeks, commencing February 13, 1967, with interest at the rate of five (5%) per cent per annum on each past due installment from due date, until paid, subject to credit for compensation benefits previously paid.
It is further ordered, adjudged and decreed that plaintiff’s right to such benefits shall be forfeited upon his refusal to submit to surgery to remove the disability of his left hand, within thirty days of this judgment becoming final upon appellate review.
Amended and affirmed.