JACEY YARNS, APPELLEE, v. LEON PLASTICS, INC., APPELLANT.
464 N.W.2d 801

Filed January 25, 1991.  No. 90-448.

Richard D. Sievers, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for appellant.

Robert R. Moodie, of Friedman Law Offices, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

The award of the Workers' Compensation Court ordered the defendant-appellant employer, Leon Plastics, Inc., to pay the plaintiff-appellee employee, Jacey Yarns, permanent total disability payments of $160 per week, reasonably necessary future medical and hospital expenses, and certain other benefits not relevant to this appeal. The employer assigns as error, in summary, the compensation court's findings that (1) Yarns' condition is work related and (2) she is presently permanently and totally disabled. We vacate the award and remand for further proceedings.

Yarns, who has a congenital low back defect (specifically, an anomalous bilateral fusion of the fifth lumbar vertebra), suffered an accident on July 11, 1987, which arose out of and in the course of her employment as a machine operator when she slipped and fell, whereupon she experienced immediate pain in her lower back and right leg. Following the mishap at work, she was involved in an automobile accident and on another occasion experienced increased back pain and numbness down both of her legs while tucking one of her children into bed.

Yarns completed the 11th grade and has obtained a general equivalency diploma. She had been employed at the same job for approximately a year and was 20 years old and pregnant at the time of the work accident. The job required that she stand throughout the day while she removed plastic parts from the various machines which fabricated them and then trimmed and placed them in boxes. She had to lift as much as 30 pounds at a time.

She has undergone a conservative course of treatment, including bed rest, medication, physical therapy treatments, and attendance at a "work hardening" program. One physician prescribed a course of home exercise, which Yarns abandoned

after a couple of weeks. According to this physician, the subject accident produced a 5-percent permanent partial impairment of Yarns' body as a whole. As a consequence, she is, in this physician's view, incapable of lifting more than 25 pounds and should not engage in frequent or continuous bending, twisting, or stooping.

A second physician opined that while Yarns' congenital back defect increased her risk of sustaining back injury, she presently suffers a 25- to 30-percent impairment as a result of the work-related accident. He is of the further opinion that Yarns has improved as much as is possible with conservative treatment; that low back surgery to fuse the fifth lumbar and first and second sacral vertebrae is reasonable and necessary; that because the surgery is intended to improve her condition, she has not yet reached maximum medical improvement; and that it could take up to a year following surgery to determine whether she would have any residual permanent disability. It is also this second physician's opinion that Yarns is not now able to return to her previous work and is limited to employment which would allow "judicious amounts of sitting, standing and walking, and probably lifting not much more than in the range of 20 to 25 pounds, and certainly not on a repetitive basis."

Yarns is now the mother of two children, almost 3 and 8 years old, respectively, continues to complain of back and leg pain, and has not been gainfully employed since the work accident. She explains that because of the continuous standing required, her present condition prevents her from returning to the job she had when she fell. She also testified that she has not undergone the surgery recommended by the second physician because her compensation benefits had stopped, but that she would be willing to have the surgery if the employer would pay for it because she has "tried everything else."

In connection with the first summarized assignment of error, the employer recognized at oral argument that in view of our recent holding in *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990), the evidence supports the compensation court's finding that Yarns' injury and resultant disability, if any and whatever it may be, were proximately caused by the work accident irrespective of the preexisting

condition, subsequent automobile accident, and postwork accident exacerbation of discomfort Yarns experienced while putting one of her children to bed.

*Heiliger* clarified that our past pronouncement that the presence of a preexisting condition enhances the degree of proof required to establish that an injury arose out of and in the course of employment means nothing more than that a workers' compensation claimant with a preexisting condition must persuade the compensation court that the injury arising out of and in the course of employment combined with the preexisting condition to produce disability. Although our earlier language addressed the matter in terms of an enhanced degree of proof, it in reality referred to the degree of persuasion required.

That leaves us with the second summarized assignment of error, the analysis of which must begin with the recognition that although whether an employee has reached maximum medical improvement or recovery is a question of fact to be determined by the compensation court, *Heiliger v. Walters & Heiliger Electric, Inc., supra*, when an employee has reached such recovery, the remaining disability is, as a matter of law, permanent. See, *Bindrum v. Foote & Davies*, 235 Neb. 903, 457 N.W.2d 828 (1990); *Kleiva v. Paradise Landscapes*, 227 Neb. 80, 416 N.W.2d 21 (1987), *after remand* 230 Neb. 234, 430 N.W.2d 550 (1988).

With that precept in mind, we turn to a study of the relevant recitations in the compensation court's award. It declares that although the "evidence suggests that [Yarns] is still undergoing medical treatment and possible future surgery, [she] has received ratings of her permanent impairment [and f]or this purpose . . . is permanently and totally disabled subject to any modification which may be warranted under" Neb. Rev. Stat. § 48-141 (Cum. Supp. 1990); that she is unable to perform work for which she has previous training or experience; that she "will continue to be totally disabled for an indefinite future period of time"; and that if she and the second physician conclude that surgery is advisable, the employer "should pay" for it. (The relevant portions of § 48-141 provide that an award which is payable periodically may be modified by agreement of

the parties, if approved by the compensation court, or, in the absence of such agreement, upon application to the compensation court at any time after 6 months from its entry "on the ground of increase or decrease of incapacity due solely to the injury . . . .")

By describing Yarns' present condition as one rendering her totally disabled for "an indefinite future period" and requiring "possible future surgery" which, according to the evidence, is intended to improve her condition, the compensation court's award ascribes to the condition inconsistent attributes of both temporariness and permanency. Logic tells us that a given condition cannot at one and the same time be both temporary and permanent.

Nor may the determination as to whether to undergo surgery be left entirely to Yarns without consideration of the appropriate consequences of such a decision on her part. Neb. Rev. Stat. § 48-120 (Reissue 1988) provides, in relevant part, that if an injured employee

> unreasonably refuses or neglects to avail himself or herself of medical or surgical treatment, except [under circumstances not presently at issue], the employer shall not be liable for an aggravation of such injury due to such refusal and neglect and the compensation court or judge thereof may suspend, reduce, or limit the compensation otherwise payable under the Nebraska Workers' Compensation Act.

Thus, while a disabled employee may not be required to undergo surgery, an unreasonable refusal to submit to surgery, taking into account the risk involved to the employee, the nature of the surgery, and the likelihood of improving the condition, may result in the forfeiture or reduction of compensation benefits, as may be appropriate. See, *Lange v. Department of Roads and Irrigation*, 141 Neb. 167, 3 N.W.2d 194 (1942) (fact that employee offered to subject himself to surgery which might reduce his disability and that employer refused to pay for same could be considered in assessing the extent of disability); *Simmerman v. Felthauser*, 125 Neb. 795, 251 N.W. 831 (1934) (although holding that particular refusal was not unreasonable, suggests that refusal of a simple and safe

operation reasonably certain to effect a cure would be unreasonable and would affect the payment of compensation benefits); *Frost v. United States Fidelity & Guaranty Co.*, 109 Neb. 161, 190 N.W. 208 (1922) (disagreement among physicians as to nature of surgery required and likely outcome supported finding that refusal was not unreasonable). See, also, *Joyce Western Corp. v. W.C.A.B.*, 518 Pa. 191, 542 A.2d 990 (1988); *Muse v. W.C.A.B.*, 514 Pa. 1, 522 A.2d 533 (1987); *Avondale Mills, Inc. v. Tollison*, 52 Ala. App. 52, 289 So. 2d 621 (1974); *Castile v. H. E. Wiese, Inc.*, 231 So. 2d 406 (La. App. 1970); *Gennett Lumber Company v. Sizemore*, 441 S.W.2d 429 (Ky. 1969); *Dillon v. Lloyd's of London*, 178 F. Supp. 164 (E.D. La. 1959); *Lesh v. Illinois Steel Co.*, 163 Wis. 124, 157 N.W. 539 (1916).

Finally, total disability exists when an injured employee is unable to earn wages in either the same or similar kind of work he or she was trained or accustomed to perform, or in any other kind of work which a person of the employee's mentality and attainments could perform. *Kleiva v. Paradise Landscapes*, 230 Neb. 234, 430 N.W.2d 550 (1988). See, also, *Sherard v. Bethphage Mission, Inc.,* 236 Neb. 900, 464 N.W.2d 343 (1991). In the absence of evidence that in addition to her inability to perform the work to which she had been accustomed Yarns is incapable of performing other work of a similar nature or work which she could be trained to perform, it cannot be said the record supports a finding of permanent total disability.

Accordingly, the award of the compensation court is vacated and the cause remanded for further proceedings in accordance with law.

AWARD VACATED, AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS.