Nicki L. White, appellee, v. Christian Homes, Inc., and
Continental Insurance Company, appellants.

508 N.W.2d 309

Filed November 9, 1993.    No. A-92-1177.

Stephen W. Kay, of Kay & Kay, for appellants.

Craig L. Kelley, of Inserra Law Offices, for appellee.

Sievers, Chief Judge, and Hannon and Miller-Lerman,
Judges.

Sievers, Chief Judge.

Christian Homes, Inc., and Continental Insurance
Company (collectively referred to as Christian) appeal the
November 23, 1992, award on rehearing of the Workers'
Compensation Court finding that Nicki L. White is
permanently and totally disabled.

## ASSIGNMENTS OF ERROR

Christian assigns the following three errors: The Workers'

Compensation Court erred (1) in finding that White is permanently and totally disabled, (2) in finding that White is physically unable to participate in an active program of vocational rehabilitation, and (3) in finding that Christian should continue to provide future medical and hospital services and treatment to White.

## STANDARD OF REVIEW

■ As this appeal is determined by factual issues, our standard of review is limited. A decision by the Nebraska Workers' Compensation Court after rehearing has the same force and effect as a jury verdict, and the findings of fact will not be set aside unless an appellate court determines that those findings are clearly erroneous. *Wiese v. Becton-Dickinson Co.*, 239 Neb. 1033, 480 N.W.2d 156 (1992).

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 1992), an appellate court will not set aside, modify, or reverse a Workers' Compensation Court decision if there is sufficient competent evidence in the record to warrant the compensation court's order, judgment, or award. See *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 475 N.W.2d 513 (1991).

■ In testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court, the evidence must be considered in a light most favorable to the successful party, and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991).

■ When medical and other expert testimony is in conflict, the resolution thereof is for the compensation court, and that court is not bound by the testimony of an expert. See *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991).

## FACTS

We do not sit to resolve disputed factual matters in workers' compensation cases. Under the standard of review, we look to the record for sufficient competent evidence to warrant the compensation court's award, and if such evidence is there, the decision will be affirmed, irrespective of how we would have decided the factual disputes. Thus, viewing the evidence in the

light most favorable to White, we find that the following facts are supported by sufficient competent evidence:

White, a petite woman standing 5 feet tall and weighing approximately 107 pounds, was employed as a certified nursing assistant, earning $4.01 per hour for a 40-hour workweek. Her work for Christian, a nursing home, involved bathing, feeding, and dressing the residents and lifting them in and out of wheelchairs and beds. On the date of her work accident, July 16, 1989, White was lifting a patient from a wheelchair when the patient's legs slipped between White's, causing White to bend over bearing the full weight of the patient. She immediately felt pain in her lower back, and the pain radiated into her legs. That the work accident occurred and that it caused the back injury are not disputed. Although White had difficulty with anemia, apparently beginning in 1979, she had nonetheless worked as a nursing assistant at several other nursing homes and had worked as a cook, a motel maid, a dishwasher, and a cashier and clerk. She had never had back difficulties prior to the date of her work accident, July 16, 1989.

While White was under the care of Dr. Steven Brestin, an orthopedic surgeon in Kearney, Nebraska, a herniated fifth lumbar disk was diagnosed. Although we do not detail them, conservative treatment measures did not resolve White's back and leg pain. Accordingly, on January 2, 1990, Dr. Brestin performed a fifth lumbar diskectomy, along with an L5-S1 spinal fusion with a bone graft taken from the left ilium. X rays taken July 16 revealed incomplete healing of the fusion on the right side. On August 27, a magnetic resonance imaging scan revealed decreased disk height at the L5-S1 level, as well as disk desiccation, indicating degenerative disk disease. As a result, a diagnosis of postoperative fibrosis around the thecal sac and the right S1 nerve root was made. White stopped seeing Dr. Brestin in November 1990 but continued to see her primary care physician, Dr. Charlotte Wirges. Additionally, White saw Dr. Samuel Smith, a Lincoln orthopedist, in December 1990. Dr. Smith authored a letter stating that White's diagnosis "is basically that of a failed lumbar laminectomy syndrome from what I believe is epidural and epineural scar formation around the L5-S1 nerve roots."

In April 1991, White began seeing Dr. Richard Slovek, a North Platte orthopedist. On June 13, Dr. Slovek wrote the following in a hospital record of White's:

26[-year-old] female who has a failed low back surgery syndrome. She has had a laminectomy and arthrodesis. She has had treatment for pseudoarthrosis. She has chronic perineural fibrosis which has caused her chronic back and radicular pain that has not responded to conservative treatment. . . . She continues to be limited with sitting to less than 30 minutes. She has a poor quality of life. She has not been able to be rehabilitated for any work activity because of the chronic back and radicular pain. The patient is not a good candidate for further surgery on her back . . . .

According to Dr. Slovek, White has a 36-percent physical impairment as a result of her condition, but in his opinion, she is incapable of any gainful employment and therefore has a 100-percent disability. Dr. Slovek testified that the basis of his 100-percent disability rating for White is that she lacks the ability to "sit long enough, stand long enough or walk enough to carry out any kind of occupation, even a sedentary job."

White testified that she now uses a cane and that on a scale of 1 to 10, her pain level is at 4 when she is at rest and at 10 when she is exerting herself. She can lift no more than 5 pounds without increasing her pain. White testified that she can sit for about 15 minutes before she experiences tingling and numbness, that she can stand for 15 minutes, and that when her symptoms flare up, she lies down. White does not believe there is any job she can do. She testified that she hardly does anything at home and that she spends half of an 8-hour day in bed because of the pain. Under Dr. Slovek's care, she had a dorsal cord stimulator inserted in her back, which she could not tolerate, and was treated with a pump that put morphine directly into her spine, which she also could not tolerate. At the suggestion of one of her physicians, she has weaned herself from narcotic pain medication and now regularly uses Extra-Strength Tylenol.

White's testimony was that she has had Graves' disease (hyperthyroidism), which was apparently discovered at the time

of her back surgery, and anemia. The Graves' disease has been treated with radioactive iodine. White takes iron supplements for the anemia, which she had well before this injury and which did not interfere with her work. At the time of the rehearing, White related that she was not troubled by symptoms from either of those conditions.

Christian argues that the award on rehearing should be reversed on the basis of its evidence that White's disability is less than 100 percent according to the testimony of Christian's examining physician, AnnaMaria Guidos, a physiatrist employed by Madonna Rehabilitation Hospital in Lincoln who saw White on one occasion, and the testimony of Elizabeth Fassig, a vocational rehabilitation consultant who had one meeting with White.

Dr. Guidos' diagnosis was chronic pain syndrome, possible fibrosis, and possible delayed union of the spinal fusion. She admitted that all the components of her diagnosis were causally related to the accident of July 16, 1989. Citing a lack of motivation to return to work because of secondary gain and inconsistencies found during her physical examination of White, Dr. Guidos rendered an opinion that White could work an 8-hour day but would be restricted to not lifting greater than 25 pounds and not bending frequently. Dr. Guidos also opined that White could sit and work for 1 hour with the option of standing or moving about as tolerated. Dr. Guidos assessed White's physical impairment at 10 percent.

Fassig testified that she was aware of the restrictions placed on White by numerous physicians, but that she was able to find positions for White as a telemetry technician, a ward clerk, and a pharmacy technician at the Tri-County Hospital in Lexington and the Good Samaritan Hospital in Kearney, all of which had paid on-the-job training. It was Fassig's opinion that these potential jobs, which would pay more than White was earning when injured, were within the guidelines outlined by Drs. Smith and Guidos and that White was capable of performing these jobs and earning a wage. Fassig disagreed with Dr. Slovek's conclusion of permanent total disability and stated that, in her opinion, White had a loss of earning capacity of 15 to 20 percent.

## DISCUSSION

█ "Whether a claimant has sustained disability which is total or partial and which is temporary or permanent is a question of fact." *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 912, 464 N.W.2d 343, 351 (1991).

In *Thom v. Lutheran Medical Center*, 226 Neb. 737, 740, 414 N.W.2d 810, 813 (1987), the Supreme Court stated:

> Earning power, as used in Neb. Rev. Stat. § 48-121(2) (Cum. Supp. 1986), is measured by an evaluation of a worker's general eligibility to procure and hold employment, the worker's capacity to perform the required tasks, and the worker's ability to earn wages in employment for which he or she is engaged or fitted.

In *Sherard v. Bethphage Mission, Inc., supra*, the court quoted with approval from Arthur Larson's treatise The Law of Workmen's Compensation that the term "compensable disability" is generally defined as inability, as a result of a work-connected injury, to perform or obtain work suitable to the claimant's qualifications and training.

█ In *Luehring v. Tibbs Constr. Co.*, 235 Neb. 883, 890, 457 N.W.2d 815, 820 (1990), the court held:

> Total disability in the context of the workers' compensation law does not mean a state of absolute helplessness, but means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he or she was trained for or accustomed to perform, or any other kind of work which a person of his or her mentality and attainments could do.

Accord *Yarns v. Leon Plastics, Inc.*, 237 Neb. 132, 464 N.W.2d 801 (1991).

With these governing legal principles and the standard of review in workers' compensation cases in mind, we address Christian's first assignment of error: The compensation court erred in awarding permanent total disability. The evidence is in conflict. Dr. Slovek, who now treats White, testified that she is incapable of returning to any type of work, even sedentary work. On the other hand, Dr. Guidos, the examining physician for Christian, and Dr. Smith, a Lincoln orthopedist, each of whom saw White once, opined that she could return to work for

an 8-hour day, with the restrictions which we have detailed above. Additionally, Christian's vocational rehabilitation consultant testified that she had found three jobs in each of two hospitals for White. This evidentiary conflict was for the compensation court to resolve. Dr. Slovek's testimony, coupled with White's self-described limitations, provides sufficient competent evidence to support a finding of permanent and total disability. At least three of the physicians who saw her agree that White suffers from "failed back surgery syndrome." This surgery, instead of resolving her back injury, has made it worse by the formation of scarring around the thecal sac and the fifth lumbar nerve root. Based on the seriousness of White's initial injury, together with the painful and limiting sequelae of her surgery, we cannot say that the compensation court was clearly wrong in holding that she was permanently and totally disabled.

· Christian's next assignment of error attacks the compensation court's holding that White is physically unable to participate in a program of vocational rehabilitation at this time. Christian's brief relies upon the testimony of its vocational consultant, who testified that White could perform the jobs which the consultant had found for her. However, it is apparent by virtue of the compensation court's finding of permanent and total disability that this testimony by Fassig was rejected. Thus, we cannot say that the conclusion that White is physically unable to participate in a program of vocational rehabilitation was clearly erroneous.

The final assignment of error assails the compensation court's finding that White is entitled to such future medical and hospital services and treatment as may be reasonably necessary. Christian argues that since physicians agree that White has reached maximum medical improvement, this means that no future medical benefits should have been awarded. Given the seriousness of White's condition, this argument is obviously without merit. To suggest that a 27-year-old person who has experienced a failed back operation and has scarring around a lumbar nerve root will never need additional medical treatment is to ignore the obvious. No physician testified that White would not ever need further treatment. If Christian disputes

a medical expense which is later incurred, the Workers' Compensation Act allows Christian to litigate the dispute at that time. This assignment of error lacks merit.

## CONCLUSION

Having reviewed the record in light of the assignments of error, we conclude that all of the assignments are without merit. Christian, having appealed to this court and having failed to obtain a reduction in the amount of White's award, is liable for attorney fees pursuant to Neb. Rev. Stat. § 48-125 (Cum. Supp. 1992), which fees we assess in the amount of $2,000.

AFFIRMED.