IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KELSEY V. SANDY PINE SYSTEMS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JOHN KELSEY, APPELLANT,

V.

SANDY PINE SYSTEMS, INC., APPELLEE.

Filed June 23, 2015.    No. A-14-1018.

Appeal from the Workers' Compensation Court: JAMES R. COE, Judge. Award vacated, and cause remanded for further proceedings.

Steven H. Howard, of Dowd, Howard & Corrigan, L.L.C., for appellant.

L. Tyler Laflin, of Engles, Ketcham, Olson & Keith, P.C., and, on brief, Brynne E. Holsten, for appellee.

IRWIN, INBODY, and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

John Kelsey appeals an order of the Nebraska Workers' Compensation Court, awarding him benefits. On appeal, Kelsey asserts that the compensation court erred in simultaneously finding that he had reached maximum medical improvement and that he required and was entitled to shoulder surgery. We find that the court's order was not supported by its inconsistent findings, and we vacate the award and remand for further proceedings.

## II. BACKGROUND

In May 2013, Kelsey was employed by Sandy Pine Systems, Inc., as a maintenance technician and electrician. On May 23, he was changing filters in an attic and struck his head on a

tress. Kelsey testified that he remembers "hearing and feeling [his] whole neck and back pop all the way down." He was apparently unconscious for a period of time, after which he reported the incident.

Kelsey testified that immediately after the accident, his "[right] shoulder hurt the worst" and that his "back hurt a little bit." Kelsey was seen at a medical clinic the same day, where a C-spine x-ray "showed normal alignment and disc space" and "[n]o obvious fracture." Additionally, although Kelsey complained of right shoulder pain, he had full range of motion. Kelsey was seen in the medical clinic 1 week later, complaining of right shoulder pain.

On June 5, 2013, Kelsey was seen at the hospital. At that time, he was scheduled to return to work. He reported some back pain and, while he was "no longer complaining of much discomfort in his neck . . . he [was] still having very sharp pain when he trie[d] to use his right arm, especially with elevation." He rated that pain "at 9/10 at times" and indicated that "[e]ven at rest, he [was] never pain free." Physical therapy was prescribed for Kelsey. He underwent physical therapy at the hospital from June 5 through July 15.

As of June 13, 2013, Kelsey did not have "any work limitations" related to his shoulder or low back. On June 21, Kelsey returned to the medical clinic for follow-up concerning his shoulder. At that time, his shoulder pain had "flared up" as a result of activity at work. Kelsey was put on light duty restrictions.

Kelsey described the light duty restrictions. He testified he was not "supposed to lift [his] arms above shoulder height" and that he was not "supposed to lift anything over 10 pounds" or "do any strenuous bending, turning." He "was supposed to basically take it easy." Kelsey's last day at work for Sandy Pine was June 25, 2013.

Kelsey's wife testified that in late June 2013, her father-in-law's "farmhouse blew up" in Idaho, with her brother-in-law, sister-in-law, and niece inside. Kelsey and his wife went to Idaho to help the family. On July 5, Kelsey left the employ of Sandy Pine.

In Idaho, Kelsey obtained some temporary employment in September 2013. In May 2014, he obtained permanent employment as a night maintenance mechanic in Idaho doing light duty work. At the time of trial, Kelsey's intention was to remain employed in that job.

In September 2013, Kelsey was seen by Dr. Mark A. Weight in Idaho for follow-up related to his back. Weight's assessment was lumbosacral radiculopathy, disc protrusion, and degenerative disc disease. Weight recommended conservative measures and an epidural steroid injection. In later follow-up appointments, Weight continued to recommend conservative measures.

In September 2013, Kelsey was seen by Dr. Kevin M. Lee in Idaho for follow-up related to his right shoulder. Kelsey reported that he had experienced pain in his shoulder since the accident, that he felt some weakness, and that it hurt "to use his arm overhead." An MRI had been performed in August 2013, showing "significant a.c. joint inflammation but appears to have intact rotator cuff."

Lee's examination indicated "[f]ull passive range of motion of the right shoulder" and "full active range of motion right shoulder without restriction." Kelsey had "excellent strength with forward flexion adduction internal and external rotation minimal pain."

Lee's assessment was that Kelsey had "[r]ight shoulder a.c. joint inflammation/arthritis" and he recommended "right shoulder arthroscopy evaluation of the rotator cuff possible

acromioplasty and distal clavicle resection." Lee noted that Kelsey had "tried oral anti-inflammatories without success so far."

Kelsey was seen at medical centers on dates in October and November 2013 with severe low back pain and continued complaints of back pain and shoulder pain. Kelsey was prescribed medication.

In February 2014, Kelsey was evaluated by Dr. Richard T. Knoebel. Knoebel diagnosed Kelsey with "[r]ight shoulder acromioclavicular joint injury and inflammation with mild residuals," as well as "[n]onspecific low back pain without verifiable radiculopathy or significant objective findings."

Knoebel's physical examination of Kelsey indicated that Kelsey had "full active range of motion of the cervical, thoracic and lumbar spine." Kelsey had "minimal tenderness with palpation of the right shoulder." He had "full active and symmetric motion of bilateral shoulders with flexion and abduction 180 degrees, extension and adduction 50 degrees, external rotation 90 degrees and internal rotation 80 degrees." He had "no rotator cuff atrophy and no biceps deformity" and had "5/5 muscle strength with shoulder abduction and external rotation, elbow flexion and extension bilaterally."

Knoebel diagnosed Kelsey with "[r]ight shoulder acromioclavicular joint injury and inflammation with mild residuals" and with "[n]onspecific low back pain without verifiable radiculopathy or significant objective findings."

Knoebel indicated that Kelsey had "had no temporary total disability regarding his subject industrial accident" and that "there is no indication for temporary total disability." Knoebel opined that Kelsey had "reached maximum medical improvement at [that] time." Knoebel opined that Kelsey's "condition is stabilized" and that "[i]t and his employability are not likely to change with any further active medical treatment or surgical intervention, nor is his degree of impairment likely to change by more than 3% within the next year." Knoebel indicated that Kelsey had "a class 1 right shoulder mild impairment, 1% upper extremity (1% whole person) impairment."

At trial, Kelsey testified that he was asking for approval for right shoulder surgery. He also requested ongoing care for his low back, but testified that he had "basically come to the understanding that [he was] going to have to just live with the pain for the rest of [his] life" and that it was "not bad enough to require surgery or any further medical attention." He also requested an award of temporary benefits from after his last day of employment at Sandy Pine until his first day of permanent employment in Idaho, from July 6, 2013, through May 11, 2014.

In October 2014, the compensation court entered an award. The court found that Kelsey was not entitled to temporary total disability benefits for the time between his leaving Sandy Pines and starting his new permanent employment in Idaho because Sandy Pines had provided light duty work within his restrictions and he had voluntarily left for personal reasons. The court awarded temporary partial disability benefits for the period of time between Kelsey's starting of temporary employment in Idaho, September 2013, until Knoebel found that Kelsey had reached maximum medical improvement, February 2014.

The court held that it was accepting "Knoebel's findings concerning [Kelsey's] neck and back" and the court found that Kelsey "did not sustain any permanent impairment or restrictions

as a result of the accident . . . to the neck or low back." The court also accepted Knoebel's report that Kelsey had "a 1 percent permanent partial impairment to the right arm."

The court also, however, held that it found "persuasive the medical report of . . . Lee . . . who recommended surgery on [Kelsey's] right shoulder for an arthroscopic evaluation of the rotator cuff with possible acromioplasty and distal clavicle resection."

The court then held that it had "given [Kelsey] the 1 percent permanent impairment rating by Dr. Knoebel without the surgery. Should the surgery recommended by Dr. Lee and apparently desired by [Kelsey] show [Kelsey] suffers an increase in impairment or a decrease in impairment, the parties may petition the Court for a further hearing concerning the extent of the change in [Kelsey's] permanent impairment."

This appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Kelsey has assigned three errors, all of which concern the compensation court's finding that he had reached maximum medical improvement with respect to his right shoulder.

## IV. ANALYSIS

Kelsey asserts that the compensation court erred in finding that he had reached maximum medical improvement with respect to his right shoulder. He asserts that the court's finding was inconsistent with the court's simultaneous approval of surgery for the shoulder, that the court erred in finding that a subsequent modification would be a sufficient remedy if the surgery changed his disability, and that because the court erred in finding he had reached maximum medical improvement with respect to his shoulder the court also erred in finding he had reached maximum medical improvement with respect to all injuries. We agree that the court's finding of maximum medical improvement while simultaneously approving surgery was inconsistent, and we vacate the award and remand for further proceedings.

A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence to in the record to warrant the making of the order, judgment, or award, or (4) he findings of fact by the compensation court do not support the order or award. *Armstrong v. State*, 290 Neb. 205, 859 N.W.2d 541 (2015).

On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* In workers' compensation cases, we determine questions of law. *Id.*

Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Kim v. Gen-X Clothing, Inc.*, 287 Neb. 927, 845 N.W.2d 265 (2014). The primary distinction between temporary and permanent disability is that the latter rests on a determination that the employee has reached the point when his or her medical condition will not further improve. See *Moyera v. Quality Pork Intern.*, 284 Neb. 963, 825 N.W.2d 409 (2013).

In *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013), the Nebraska Supreme Court iterated that a disability cannot be both temporary and permanent at the same time. Temporary benefits are available until it becomes apparent that the employee will get no better or no worse because of the injury; when an employee has reached maximum medical improvement, any remaining disability is, as a matter of law, permanent. See *Id.* Temporary disability benefits are discontinued at the point of maximum medical improvement because a disability cannot be both temporary and permanent at the same time. *Visoso v. Cargill Meat Solutions, supra*.

The date of maximum medical improvement for purposes of ending a workers' compensation claimant's temporary disability is the date upon which the claimant has attained maximum medical recovery from the injuries sustained in a particular compensable accident. *Stacy v. Great Lakes Agri Marketing, Inc.*, 276 Neb. 236, 753 N.W.2d 785 (2008). A claimant has not reached maximum medical improvement until all the injuries resulting from an accident have reached maximum medical healing. *Id.*

In the present case, the compensation court adopted Dr. Knoebel's findings and report, which included a finding that Kelsey had reached maximum medical improvement as of February 6, 2014, and a finding that Kelsey had suffered no permanent impairment to the neck or low back and a 1 percent impairment to the right arm. The court concluded that Kelsey's entitlement to temporary disability benefits ceased on February 6.

Generally, whether a workers' compensation claimant has reached maximum medical improvement is a question of fact. See *Roan Eagle v. State*, 237 Neb. 961, 468 N.W.2d 382 (1991). In this case, the compensation court's factual conclusion that Kelsey had reached maximum medical improvement was supported by sufficient competent evidence in the form of Dr. Knoebel's report.

Nonetheless, the compensation court, after finding that Kelsey had reached maximum medical improvement with respect to his right shoulder as of February 6, 2014, then proceeded to make another finding that the court found persuasive the medical report of Dr. Lee, recommending "surgery on [Kelsey's] right shoulder for an arthroscopic evaluation of the rotator cuff with possible acromioplasty and distal clavicle resection." The court then approved this surgery on Kelsey's right shoulder. Recognizing that the surgery might alter Kelsey's medical condition, the court indicated that the parties could later petition the court for a modification if the surgery resulted in a change in his medical condition.

The compensation court's award, thus, includes both a finding that Kelsey has reached maximum medical improvement, which would suggest that additional medical treatment will not further improve his condition, and a finding that Kelsey is entitled to undergo right shoulder surgery and a recognition that the surgery might improve his condition.

Kelsey argues that these two findings by the compensation court are logically inconsistent and argues that the present case is comparable to *Yarns v. Leon Plastic, Inc.*, 237 Neb. 132, 464 N.W.2d 801 (1991). In that case, the compensation court declared in its award that the employee was entitled to undergo surgery but also concluded that the employee's disability status was permanent. On review, the Nebraska Supreme Court held that

> By describing [the employee's] present condition as one rendering her totally disabled for 'an indefinite future period' and requiring 'possible future surgery' which, according to the

evidence, is intended to improve her condition, the compensation court's award ascribes to the condition inconsistent attributes of both temporariness and permanency. Logic tells us that a given condition cannot at one and the same time be both temporary and permanent.

*Id.* at 136, 464 N.W.2d at 804. The Court vacated the award and remanded for further proceedings.

Sandy Pines does not address this authority in its brief on appeal. Rather, Sandy Pines points us to authority recognizing that a condition can be found to have become stable and that future treatment will not improve the condition, despite some treatment being necessary, such as physical therapy or medication, to alleviate pain. See *Briggs v. Consolidated Freightways*, 234 Neb. 410, 451 N.W.2d 278 (1990). In that case, the evidence established that the claimant had been given a permanent impairment rating, that there were no objective medical conditions to be eliminated with treatment, and that the only further treatment recommended was to reduce subjective pain. *Briggs v. Consolidated Freightways, supra.*

We conclude that the present case is more comparable to the situation presented in *Yarns v. Leon Plastics, Inc., supra,* than the situation presented in *Briggs v. Consolidated Freightways, supra*. In the present case, the compensation court's award specifically recognized that the approved surgery had the potential to alter Kelsey's impairment and indicated that if that happened, the parties could petition for a further hearing concerning "the extent of the change in [Kelsey's] permanent impairment." There is no evidence in the present case to suggest that the surgery was only recommended to alleviate subjective pain, as there was in *Briggs v. Consolidated Freightways, supra*.

The compensation court's findings are logically inconsistent. The court simultaneously made a finding that Kelsey has attained maximum medical improvement with respect to his shoulder, which would indicate that further treatment will not alter his impairment, and a finding that Kelsey is entitled to undergo recommended right shoulder surgery that might alter his impairment. Because these findings are inconsistent, the court's findings do not support its award.

Accordingly, the award of the compensation court is vacated and the cause remanded for further proceedings consistent with law. See *Yarns v. Leon Plastics, Inc., supra*.

AWARD VACATED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.